Accordingly, the summary judgments under review are reversed and the matter is remanded to the trial court for further proceedings.

640 A.2d 1205

RARITAN PLAZA I ASSOCIATES, L.P., A NEW JERSEY LIMITED PARTNERSHIP, PLAINTIFF–APPELLANT, v. CUSHMAN & WAKEFIELD OF NEW JERSEY, INC., A NEW JERSEY CORPORATION, DEFENDANT–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued March 15, 1994—Decided May 10, 1994.

Before Judges MICHELS, SKILLMAN and WEFING.

*John H. Klock* argued the cause for appellant (*Crummy, Del Deo, Dolan, Griffinger & Vecchione,* attorneys; *Mr. Klock,* of counsel; *Mr. Klock* and *Ann M. Dooley,* on the brief).

*Paul Kaufman* argued the cause for respondent (*Kaufman, Gelbert & Bern,* attorneys; *Mr. Kaufman,* of counsel; *Mr. Kaufman* and *Mitchell H. Klopper,* on the brief).

The opinion of the court was delivered by

MICHELS, P.J.A.D.

We granted plaintiff Raritan Plaza I Associates, L.P. leave to appeal from an order of the Chancery Division that denied its motion for a preliminary injunction to stay an arbitration proceeding. The arbitration would determine the amount of commissions allegedly due defendant Cushman & Wakefield of New Jersey, Inc. The commissions at issue arise from the renewal of a lease by Prudential Bache, Inc. (Pru–Bache) for office space at premises known as Raritan Plaza I in Edison, New Jersey. Plaintiff sought to enjoin the arbitration proceeding pending the trial court's resolution of plaintiff's claim that an earlier arbitration between the parties barred the present arbitration under the entire controversy doctrine.

Plaintiff negotiated an exclusive brokerage agreement with defendant on October 1, 1984 under which defendant was appointed as plaintiff's exclusive real estate agent. Pursuant to the agreement, defendant was obligated to use its best efforts to rent space in the Raritan Plaza I office building. Defendant was to earn commissions on each lease it procured, and could also earn commissions on renewals, extensions and expansion of leases. The agreement contained an arbitration clause, which provided:

> If there be any controversy arising out of, or in connection with, this Agreement, it shall be resolved by the American Arbitration Association in accordance with the then prevailing rules of that Association.... Judgment upon the award may be entered in any court in the State of New Jersey having jurisdiction.

On or about June 7, 1987, plaintiff leased space on the eighth and ninth floors of the Raritan Plaza I office building to Pru–Bache. Defendant did not procure this original lease. The original lease ran from September 1, 1987 through February 28, 1993, and contained a renewal clause which provided for automatic renewal for an additional sixty-six months "unless the New Jersey

Hazardous Waste Facilities Siting Commission ... has designated a portion of the Raritan Center ... as a site for an incinerator, impoundment, or other processing of hazardous waste (Designated Site)." If the property became a Designated Site, Pru–Bache could opt not to renew the lease under those circumstances by submitting a statement to plaintiff in writing by September 1, 1992 and by paying plaintiff approximately $1,000,000, depending on how much property Pru–Bache was renting at the time of termination.

The Raritan Plaza property was never listed as a Designated Site and was, in fact, removed from the list of Designated Site candidates in June 1989. Thus, Pru–Bache never had the option not to renew its lease. Pru–Bache confirmed in writing that its lease would be renewed automatically for the period of March 1, 1993 through August 31, 1998 by way of a letter to plaintiff dated June 9, 1992. Plaintiff claimed that although defendant did not procure the Pru–Bache lease, it had access to and knowledge of the lease and its renewal terms. Defendant claimed, however, that it did not learn of the lease renewal until November 1992, although defendant now contends that it did not know of the renewal until March 1993.

At various times throughout the original lease term, the Pru–Bache lease was amended to include additional premises in the Raritan Plaza I office building. The last expansion consisted of the lease of an additional 41,591 square feet of space on the sixth and seventh floors for an eighty-six month period running from June 15, 1991 through August 31, 1998. This period of time overlapped with the original lease which ran from September 1, 1987 through February 28, 1993. The expansion was effectuated by a letter dated November 6, 1990, which amended the original lease. The expansion terms specifically provided that the expansion was subject to the terms of the original lease, except that Paragraph 55 of the original lease regarding automatic renewal did not apply.

On May 30, 1992, after a dispute arose between defendant and plaintiff as to the amount of real estate commissions due under the brokerage agreement, defendant demanded arbitration through the American Arbitration Association. Defendant sought to recover commissions in the amount of $182,812.90, arising from the Pru–Bache lease and four other leases. Of that amount, defendant claimed that a $105,482.36 commission arose from the Pru–Bache lease. Defendant submitted an invoice to plaintiff which indicated that the commissions sought were based only on the lease of the expanded premises on the sixth and seventh floors. On November 4, 1992, at the conclusion of the arbitration proceedings, defendant was awarded $155,000. The arbitration award was confirmed on January 14, 1993 and plaintiff satisfied the judgment.

On May 21, 1993, defendant commenced a second arbitration to resolve a dispute regarding commissions arising from the renewal of Pru–Bache's original lease. Defendant contended that this claim was separate and distinct from the claim for commissions resolved by the first arbitration. Plaintiff contended that the amount of commissions arising from the renewal of the original lease was already determined at the first arbitration, and instituted this action seeking preliminary and permanent injunctions to prevent the second arbitration. Plaintiff claimed that the second arbitration was barred by the entire controversy doctrine. Defendant disagreed and claimed that during the first arbitration the arbitrators specifically decided not to rule on commissions arising from the renewal of the original lease because the claim was premature. Defendant contended that the second arbitration was not barred by the entire controversy doctrine, and, therefore, an injunction should not issue.

The trial court refused to stay the second arbitration. In reaching this decision, the trial court did not resolve the merits of plaintiff's entire controversy defense. Rather, the trial court analyzed the issue with respect to the requirements of a preliminary injunction under *Crowe v. DeGioia*, 90 *N.J.* 126, 132–34, 447 *A.*2d 173 (1982). The trial court concluded that plaintiff failed to

demonstrate that irreparable harm would occur if the arbitration proceeded, and plaintiff failed to demonstrate a likelihood of success on the merits. We denied plaintiff's motion for leave to appeal. However, upon reconsideration, we granted plaintiff leave to appeal, stayed the arbitration proceedings pending appeal and accelerated the appeal.

Plaintiff contends generally that the second arbitration for commissions allegedly due defendant for the renewal of the original Pru–Bache lease is barred by the entire controversy doctrine. According to plaintiff, defendant could and should have raised all issues concerning commissions from the Pru–Bache lease at the first arbitration because defendant knew or should have known not only about the lease of the expanded premises but also about the renewal of the original lease. Thus, plaintiff argues that in order to give appropriate consideration to its entire controversy defense, the second arbitration should be stayed until the trial court has ruled upon that defense. We agree and reverse.

Generally, recourse to our courts may be had in an appropriate case to determine the threshold issue of whether a particular dispute is arbitrable. *Keystone Ins. Co. v. Bowman*, 138 *N.J.Super.* 544, 549, 351 A.2d 767 (App.Div.1976); *see also Laborers' Local Union v. Interstate Curb & Sidewalk*, 90 *N.J.* 456, 463, 448 A.2d 980 (1982). In *Laborers' Local Union v. Interstate Curb & Sidewalk, supra,* our Supreme Court held that where a collective bargaining agreement did not expressly vest in the arbitrator the authority to determine who, other than the signatory parties, can be bound by its compulsory arbitration terms, the proper course was to remand the matter to the Chancery Division for an appropriate hearing as to the arbitrability of the issue. *See also Ridgefield Park Educ. Ass'n v. Ridgefield Park Bd. of Educ.,* 78 *N.J.* 144, 153, 393 A.2d 278 (1978); *Board of Educ. v. Bloomfield Educ. Ass'n,* 251 *N.J.Super.* 379, 383, 598 A.2d 517 (App.Div.1990), *aff'd,* 126 *N.J.* 300, 598 A.2d 518 (1991); *Saker v. Carpenters Dist. Council of South Jersey,* 153 *N.J.Super.* 418, 425, 379 A.2d 1287 (App.Div.1977).

In the context of Federal arbitration, the same principles are applied. In *PaineWebber Inc. v. Hartmann*, 921 *F*.2d 507, 514–15 (3rd Cir.1990), the Third Circuit held that because a party cannot be required to submit to arbitration a dispute which he has not agreed so to submit, and because a party cannot be required to arbitrate the threshold dispute of whether an underlying dispute is itself arbitrable, the question of arbitrability is an issue for judicial determination. The court reasoned:

> The Hartmanns argue, in essence, that it makes no difference whether the court or an arbitrator decides, as an initial matter, the scope of the arbitrator's jurisdiction under the arbitration agreement because the outcome will be the same in either event. While this argument strikes us as unsound on what might be described as empirical or behavioral terms, we need not rest our decision on the imperfect art of prognostication. In the end, the argument fails because it squarely contradicts the Supreme Court's jurisprudence. As we noted previously, *see supra* at 510–511, the Supreme Court has clearly and repeatedly stated that "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT & T Technologies* [*v. Communications Workers of America* ], 475 *U.S.* [643] at 648, 106 *S.Ct.* [1415] at 1418 [89 L.Ed.2d 648] [ (1986) ] (quoting [*Steelworkers v.*] *Warrior & Gulf* [*Navigation Co.*], 363 *U.S.* [574] at 582, 80 *S.Ct.* [1347] at 1352 [4 L.Ed.2d 1409] [ (1960) ] ). The logical corollary of this policy is that a party cannot be required to arbitrate the threshold "dispute," as it were, of whether the underlying dispute is itself arbitrable. Hence, "the question of arbitrability . . . is undeniably an issue for judicial determination." *AT & T Technologies,* 475 *U.S.* at 649, 106 *S.Ct.* at 1418.
>
> In light of this policy, we think it obvious that the harm to a party would be *per se* irreparable if a court were to abdicate its responsibility to determine the scope of an arbitrator's jurisdiction and, instead, were to compel the party, who has not agreed to do so, to submit to an arbitrator's own determination of his authority. Even if such things could be known in advance, it would be irrelevant whether the arbitrator's determination would be the same as the court's. A reluctant party has a right to a judicial determination of his obligation to arbitrate. We hold, therefore, that the district court did not abuse its discretion or commit an error of law in determining that PaineWebber would suffer irreparable harm if it were forced to submit to the arbitrator's jurisdiction, if even just for a determination of the scope of that jurisdiction.

*[Id.* at 514–15].

■ Because issues of arbitration are properly decided by the courts, it follows that ordinarily when "questions of arbitrability are presented, it is appropriate for the court to restrain the arbitration proceeding until it decides whether the issues in question are subject to arbitration." *Aysseh v. Lawn,* 180 *N.J.Super.* 391, 395, 434 *A.*2d 1146 (Ch.Div.1981). In an analogous situation

in *City of Rochester v. AFSCME, Local 1635*, 54 A.D.2d 257, 388 N.Y.S.2d 489, 491 (N.Y.App.Div.1976), although the New York Appellate Division did not stay a second arbitration proceeding on the ground that it was not barred by *res judicata*, the court recognized the fundamentally sound principle that such threshold issues are properly decided in the first instance by courts, not by arbitrators, stating:

> The doctrine of "res judicata" is an appropriate ground upon which a court may grant a stay of such proceedings since "res judicata" is applicable to issues resolved by earlier arbitration and the scope of an award, and therefore its "res judicata" effect is an issue properly determinable by the court and not the arbitrators (*Rembrandt Ind. v. Hodges Int.*, 38 N.Y.2d 502, 381 N.Y.S.2d 451, 344 N.E.2d 383; *Matter of Springs Cotton Mills* [*Buster Boy Suit Co., Inc.*], 300 N.Y. 586, 89 N.E.2d 877; *Matter of Weinberger* [*Friedman* ], 41 A.D.2d 620, 340 N.Y.S.2d 720). Thus, this court must ascertain whether the issues raised here were determined in the prior arbitration proceedings.

*See also Gruntal & Co., Inc. v. Steinberg*, 837 F.Supp. 85, 88–92 (D.N.J.1993); *Jersey City Police v. Jersey City*, 257 N.J.Super. 6, 13–15, 607 A.2d 1314 (App.Div.1992).

█ It is undisputed that the parties here have a contractual right to arbitrate their commission dispute and that this dispute is properly arbitrable. However, it is unclear on this record whether the precise issue had been or could have been previously resolved in the prior arbitration so that the preclusionary principles of the entire controversy doctrine would bar the second arbitration proceeding. This threshold issue is fundamentally a question of arbitrability and is uniquely within the province of the court, not arbitrators, and, therefore, this issue should be decided by the court in the first instance. Consequently, we hold that the trial court should have stayed the second arbitration proceeding until it resolved the issue as to whether defendant's present commission dispute is barred by the entire controversy doctrine.

Accordingly, we reverse the order denying plaintiff's motion for a stay of the second arbitration and remand the matter to the trial court with directions that the trial court hear and decide plaintiff's claim that the second arbitration is barred by the entire controver-

sy doctrine. Pending resolution of that issue, the second arbitration is stayed.