[766 NYS2d 1]

Merrill Lynch, Pierce, Fenner & Smith, Inc., et al., Respondents, v Clifford B. Benjamin, Appellant.

First Department, October 23, 2003

## APPEARANCES OF COUNSEL

*Bresslser, Amery & Ross (Lawrence D. Ross, David J. Campbell* and *Thomas L. Weisenbeck* of counsel), for respondents.

*Kaufmann, Feiner, Yamin, Gildin & Robbins LLP (Kevin M. Shelley* of counsel), for appellant.

## OPINION OF THE COURT

Ellerin, J.

Parties to an action for dissolution of a marriage are entitled to anticipate the final resolution of all issues relating to the marriage relationship without fragmentation and are obligated to litigate all issues affecting the marriage in that action (*see Boronow v Boronow*, 71 NY2d 284, 290-291 [1988]). Thus, important issues ancillary to the dissolution of the marriage, such as title to marital property, must be raised in the divorce proceeding, and if they could have been, but were not, raised they may not thereafter be raised in a separate action (*id.* at 290). While strong public policy considerations favor finality in the resolution of disputes of all kinds to assure that parties will not be vexed by further litigation (*see Matter of Reilly v Reid*, 45 NY2d 24, 28 [1978]), nowhere is the "salutary doctrine against prolonging strife" (*Reed v Allen*, 286 US 191, 199 [1932]) more critical than in divorce proceedings. "[A] continuation of the relationship and of the conflict among parties to a matrimonial litigation would be particularly perverse" (*Boronow, supra* at 291).

This appeal presents such a perverse continuation of the conflict between parties to a matrimonial litigation. The essential facts are not disputed. Petitioner Amy Clayton and re-

spondent Clifford Benjamin were married from 1986 until 2000, when they were divorced in Connecticut. In the divorce proceeding, they agreed to the distribution of certain assets, including the joint brokerage account with right of survivorship that they had opened at Merrill Lynch, for which Clayton worked as a broker. The Connecticut court made various findings of fact, as reflected in the judgment of divorce, which attributed the greater share of responsibility for the breakdown of the marriage to Clayton and noted that, while Clayton earned more than Benjamin during the marriage, the net effect of her contributions to the couple's purchase of a condominium and their expenses was diminished by margin costs and losses on her stock trades. The court also found that throughout the marriage Clayton controlled most of the couple's finances, made virtually all the investment decisions, intermingled their jointly owned securities and funds from their stock transactions with her own personal stock and funds held in her own bank accounts and transferred some $40,000 of the couple's assets, without consideration, to her parents. In response to these findings, the court ordered, inter alia, the following assignments of property: Clayton was ordered to pay Benjamin $80,000 realized from the approximately 2,800 shares of Merrill Lynch common stock that she owned individually (and of which she would retain ownership) and to transfer 50% of her Merrill Lynch pension and retirement benefits to him and 57% of her interest in an IRA to an IRA designated by him.

Sixteen months after the judgment of divorce was issued, Benjamin filed a statement of claim with the National Association of Securities Dealers (NASD) against Clayton and Merrill Lynch, purportedly pursuant to the arbitration clause in his customer agreement and to NASD rules, seeking damages resulting from Clayton's alleged material misrepresentations and omissions, unsuitable trading, breach of contract, misuse of funds and excessive trading. Benjamin claimed that Clayton had misrepresented to him that she would invest his funds in a manner consistent with his stated investment objective and that, once made, those investments were performing well. He claimed that Clayton did not invest his funds in a manner consistent with his objective; that she siphoned funds out of their joint account and into her personal account, the existence of which she kept secret from him; that she removed his funds from their joint account for her own purposes and without his permission; and that she failed to open an IRA for him and

instead deposited the funds he had given her for that purpose into their joint account, in which she then engaged in unsuitable and excessive trading. Benjamin sought to hold Merrill Lynch secondarily liable for the alleged resulting losses.

In September 2002, Clayton and Merrill Lynch commenced this proceeding to stay the arbitration on the ground, inter alia, that Benjamin improperly was seeking to relitigate issues that were and/or should have been raised in the divorce proceeding. Benjamin moved to dismiss the petition, asserting that, rather than seeking to relitigate issues, he had deliberately chosen to present these claims for the first time in arbitration. The court permanently stayed the arbitration, holding that Benjamin's claim was barred by the doctrine of res judicata because the judgment of divorce was conclusive as to any property questions actually litigated and any property questions that could have been litigated in the matrimonial action, including the alleged waste of joint marital assets.

Benjamin contends that a court may not grant a stay of pending arbitration on res judicata grounds, because the CPLR limits a court's role in an application for such a stay to determining whether a valid agreement to arbitrate was made or was complied with and whether the claim sought to be arbitrated is barred by an applicable statute of limitations (CPLR 7503 [b]). He also argues that, in any event, on the instant record neither the divorce proceeding nor the judgment of divorce is sufficient to invoke the doctrine of res judicata.

In support of his argument that a court may not grant a stay of arbitration on res judicata grounds, Benjamin relies on cases holding that the preclusive effect of an arbitration award on subsequent arbitration proceedings is a matter to be determined by the arbitrator (*see e.g. Matter of City School Dist. of City of Tonawanda v Tonawanda Educ. Assn.*, 63 NY2d 846 [1984]; *Matter of Port Auth. of N.Y. & N.J. v Office of Contract Arbitrator*, 254 AD2d 194 [1998]). However, neither the Court of Appeals nor this Court has addressed the question of whether courts or arbitrators should determine the preclusive effect of a *court's judgment* on a subsequent arbitration (*but see Matter of Reed v Cohen*, 120 AD2d 598 [2d Dept 1986], *lv denied* 68 NY2d 608 [1986] [holding that Special Term did not err in permanently staying, on res judicata grounds, arbitration of claims arising from same series of transactions as were settled after litigation in Surrogate's Court]; *see also Matter of Carp [Van Tassel]*, 234 AD2d 715 [3d Dept 1996], *lv denied* 89 NY2d 813 [1997] [hold-

ing that Supreme Court properly vacated arbitration award, according res judicata effect to prior small claims court judgment]).

■ For the following reasons, we hold that the preclusive effect of a court's judgment on a subsequent arbitration is a matter to be determined by the court.

As a general rule, arbitration is a favored method of dispute resolution (*see e.g. Matter of Smith Barney Shearson v Sacharow*, 91 NY2d 39, 49 [1997]). Under CPLR article 75, which creates "a hospitable procedural environment that is intended to encourage arbitration,"[1] the courts play the "gatekeeping" role of deciding certain "threshold"[2] issues before compelling or staying arbitration (CPLR 7503). The merits of a controversy are reserved for the arbitrator (CPLR 7501), whose factual findings, interpretation of the arbitration agreement and judgment concerning remedies are binding on the court (*Matter of New York State Correctional Officers & Police Benevolent Assn. v State of New York*, 94 NY2d 321, 326 [1999]). Unless the arbitration agreement provides otherwise, the arbitrator is not bound by principles of substantive law or rules of evidence (*Matter of Silverman [Benmor Coats]*, 61 NY2d 299, 308 [1984]). The arbitrator "may do justice as he sees it, applying his own sense of law and equity to the facts as he finds them to be" (*id.*). Even where the arbitrator makes errors of law or fact, the court may not undertake to conform the award to its sense of justice (*Matter of New York State Correctional Officers, supra*). Only where an award is totally irrational or exceeds a specifically enumerated limitation on the arbitrator's power may it be vacated by the court (*Matter of Silverman, supra* at 308).

The courts' gatekeeping role is delineated in CPLR 7503, which sets forth three specific issues a court must decide, if called upon to do so, before compelling or staying arbitration. These threshold issues are whether a valid agreement was made, whether the agreement was complied with, and whether the claim sought to be arbitrated is barred by a statute of limitations. While not specifically enumerated in the statute, there is another threshold issue which is reserved for decision by the court—that is, whether public policy precludes arbitration of the subject matter of a particular dispute (*see* Alexander, *supra* at 287; *Matter of City of New York v Uniformed Fire Officers Assn.*, 95 NY2d 273, 281 [2000] ["We have recognized limited

1. Alexander, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR C7501:1, at 286 (1998).
2. Alexander, *supra* at 287.

instances where arbitration is prohibited on public policy grounds alone"]).

It is because of the strong deference given to arbitration that "it has become increasingly important to identify at the threshold those subjects which should not be arbitrated—those exceptions which have been recognized 'as so interlaced with strong public policy considerations that they have been placed beyond the reach of the arbitrators' discretion' " (*Glauber v Glauber*, 192 AD2d 94, 97 [1993], quoting *Matter of Associated Teachers of Huntington v Board of Educ.*, 33 NY2d 229, 235 [1973]). In matters of child custody and visitation, for instance, where public policy makes paramount the best interests of the child, the Domestic Relations Law places the responsibility on the courts for making orders on that basis, irrespective of any bargain the parents have struck (*id.*). Since an agreement to arbitrate the issue of custody is tantamount to an agreement to give custody, enforcing such an arbitration agreement would be contrary to public policy (*id.* at 98).

Another matter "intertwined with overriding public policy considerations" and therefore beyond the reach of arbitrators' discretion is the disqualification of an attorney from representing a client (*see Bidermann Indus. Licensing v Avmar N.V.*, 173 AD2d 401, 402 [1991]). Like matters of attorney discipline, which have been held beyond the jurisdiction of arbitrators, issues of attorney disqualification involve interpretation and application of the Code of Professional Responsibility and Disciplinary Rules and cannot be left to the determination of arbitrators selected by the parties themselves for expertise in the particular industries in which they are engaged (*id.*).

Yet a third area of law that represents a public policy of the "first magnitude" and is therefore beyond the reach of arbitrators' discretion is the enforcement of state antitrust law (*see Matter of Aimcee Wholesale Corp. [Tomar Prods.]*, 21 NY2d 621, 625 [1968]). Since courts may not set aside arbitration awards for misapplication of the law, they may be called upon to enforce arbitration awards that are "directly at variance with statutory law and judicial decision interpreting that law" (at 627) and cannot "abdicate their control" over such an important policy (*id.* at 630).

We find that determining the preclusive effect of court judgments on subsequent arbitrations is another subject "so interlaced with strong public policy considerations that [it must be] placed beyond the reach of the arbitrators' discretion' "

(*Matter of Associated Teachers v Board of Educ.*, 33 NY2d 229, 235 [1973], quoted in *Glauber*, 192 AD2d at 97). The doctrine of res judicata is "the law's recognition of the fact that it is to the interest of the State that there should be an end to litigation" (*Israel v Wood Dolson Co.*, 1 NY2d 116, 118 [1956]). In the interest of protecting their judgments, "[c]ourts should not have to stand by while parties re-assert claims that have already been resolved" (*Kelly v Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 985 F2d 1067, 1069 [1993], *cert denied* 510 US 1011 [1993]). "No matter what, courts have the power to defend their judgments as *res judicata*, including the power to enjoin or stay subsequent arbitrations" (*In re Y & A Group Sec. Litig.*, 38 F3d 380, 382 [1994], *reh denied sub nom. Dean Witter Reynolds v Valk*, 1994 US App LEXIS 36524 [8th Cir, Oct. 21, 1994]).

It is one thing for an arbitrator to make a determination of the preclusive effect of an arbitration award on a subsequent arbitration arising from the same arbitration agreement (*see e.g. Matter of City School Dist. of City of Tonawanda v Tonawanda Educ. Assn.*, 63 NY2d 846 [1984]; *Matter of Port Auth. of N.Y. & N.J. v Office of Contract Arbitrator*, 254 AD2d 194 [1998]). It is something quite different for an arbitrator to make a determination of the preclusive effect of a court's judgment on a subsequent arbitration. That involves the interpretation of statutory law and judicial decisions in areas likely to be both outside the scope of the arbitration and beyond the arbitrator's competence. The undesirability of such an exercise is particularly apparent in the instant appeal, where an arbitrator selected for expertise in securities could be making a determination of the preclusive effect of a divorce judgment on a securities arbitration. Where a court's judgment is at issue, policy considerations mandate that it be left to the court in the first instance to decide the preclusive effect. Parenthetically, it may be noted that, even though an arbitration award cannot be vacated for errors of law, courts have interceded to protect parties from arbitrators' erroneous determinations of the preclusive effect of earlier arbitration awards, vacating the subsequent awards on the ground that the arbitrators exceeded their authority (*see e.g. Motor Veh. Acc. Indem. Corp. v Travelers Ins. Co.*, 246 AD2d 420 [1998]; *Casey v Country-Wide Ins. Co.*, 240 AD2d 232 [1997]).

Fairness to the parties also mandates, at some point, an end to litigation. "Afterthoughts or after discoveries however understandable and morally forgivable are generally not enough to

create a right to litigate anew" (*Matter of Reilly*, 45 NY2d at 28). Nor, certainly, are ambushes planned in advance, particularly in the emotional minefields of matrimonial litigation. Fairness to the parties dictates that former spouses not have the power to drag one another back into legal proceedings on matters that were disposed of in their judgment of divorce (*see Boronow, supra*).

In New York equitable distribution cases, when the court grants relief that permanently dissolves the marital status, the property questions are controlled not by ordinary property principles but by the provisions of the equitable distribution statute,[3] which provides that the court "shall determine the respective rights of the parties in their separate or marital property" (Domestic Relations Law § 236 [B] [5] [a]). Similarly, in a Connecticut dissolution action, the distribution of marital property is governed by the criteria set forth in Connecticut General Statutes § 46b-81 (*see Bleuer v Bleuer*, 59 Conn App 167, 172-173, 755 A2d 946, 949-950 [2000]; *see also Debowsky v Debowsky*, 12 Conn App 525, 526, 532 A2d 591, 592 [1987] ["A fundamental principle in dissolution actions is that a trial court may exercise broad discretion in awarding alimony and dividing property as long as it considers all relevant statutory criteria"]).

The "wasteful dissipation of assets by either spouse" is one of the statutory criteria for the court's consideration in New York (*see* Domestic Relations Law § 236 [B] [5] [d] [11]). In Connecticut, where the court "may assign to either the husband or wife all or any part of the estate of the other" (Conn Gen Stat § 46b-81 [a]), in fixing the nature and value of any property to be assigned, the court must consider "the contribution of each of the parties in the acquisition, preservation or appreciation in value of their respective estates" (Conn Gen Stat § 46b-81 [c]; *see Bleuer*, 59 Conn App at 174, 755 A2d at 950 [affirming court's decision to distribute property to plaintiff "because the defendant destroyed whatever value the business might have had"]).

■ Thus, whether it is expressed as the wasteful dissipation of assets by one spouse or the diminution of the assets by the spouse's misconduct in her capacity as securities broker for herself and her husband, the claim that Benjamin deliberately reserved for arbitration was extinguished in the divorce action because it arose out of the same "factual grouping" as the

---

**3.** Scheinkman, Practice Commentaries, McKinney's Cons Laws of NY, Book 14, Domestic Relations Law C234:2, at 104 (1999).

claims in that action (*see generally Matter of Reilly, supra*). Indeed, the factual findings and the orders entered in the divorce judgment reallocating the parties' resources indicate that the claim of investment misconduct was raised in substance, though perhaps not in haec verba, and addressed in that action.

We hold therefore that Benjamin's claim that Clayton fraudulently induced and misdirected the investment of his funds in their joint brokerage account is barred by res judicata (*Schuylkill Fuel Corp. v B. & C. Nieberg Realty Corp.*, 250 NY 304, 306-307 [1929] ["A judgment in one action is conclusive in a later one not only as to any matters actually litigated therein, but also as to any that might have been so litigated, when the two causes of action have such a measure of identity that a different judgment in the second would destroy or impair rights or interests established by the first"]; *Partlow v Kolupa*, 122 AD2d 509, 510 [1986] [barring plaintiff's claim of conversion because it could have been litigated in the earlier divorce action], *affd* 69 NY2d 927 [1987]).

Benjamin's argument that he could not have litigated his claim against petitioner Merrill Lynch in the divorce action does not alter the result. Benjamin's claim against Merrill Lynch is derivative of his claims against Clayton. While he might have openly reserved these claims against Clayton and Merrill Lynch for later disposition in another forum (*see e.g. McCasland v McCasland*, 68 NY2d 748 [1986] [plaintiff specifically reserved her right to pursue her claims to an equitable share of defendant's interests in certain corporations]), Benjamin chose instead to raise them after the matrimonial action had finally resolved all issues relating to the joint brokerage account. He may not now press these claims against Clayton or Merrill Lynch (*compare Matter of Zimmerman [Cohen]*, 236 NY 15, 19 [1923] [defendant deliberately waived his right to enforce arbitration by choosing to proceed by an action in court to determine his claims]; *Esquire Indus. v East Bay Textiles*, 68 AD2d 845 [1979] [same]).

Accordingly, the order and judgment (one paper) of the Supreme Court, New York County, entered February 27, 2003, which granted the petition to stay arbitration, should be affirmed, without costs.

BUCKLEY, P.J., MAZZARELLI, WILLIAMS and MARLOW, JJ., concur.

Order and judgment (one paper), Supreme Court, New York County, entered February 27, 2003, affirmed, without costs.