966 A.2d 54 (2009)
405 N.J. Super. 586
Robinlynn SWEENEY,[1] Plaintiff-Respondent,
v.
Robert SWEENEY, Defendant.
RBC Dain Rauscher, Inc., Appellant.
No. A-1182-07T2
Superior Court of New Jersey, Appellate Division.
Argued telephonically October 16, 2008.
Decided March 12, 2009.
*56 Joel E. Davidson, argued the cause for appellant (Davidson & Grannum, LLP, attorneys, Orangeburg, NY; Mr. Davidson, on the brief).
Debra G. Speyer, Philadelphia, PA (Law Office of Debra G. Speyer) of the Pennsylvania bar, admitted pro hac vice, argued the cause for respondent (Chiarolanza & DeAngelis, Madison, and Ms. Speyer, attorneys; Samuel F. DeAngelis and Ms. Speyer, on the brief).
Before Judges R.B. COLEMAN, SABATINO and SIMONELLI.
The opinion of the court was delivered by
COLEMAN, R.B., J.A.D.
Appellant, RBC Dain Rauscher, Inc. (RBC), appeals from two orders dated October 12, 2007, entered by the Family Part on cross-motions filed by the parties. The orders (a) denied with prejudice RBC's motion to intervene and stay arbitration, (b) granted the cross-motion of plaintiff Robinlynn Sweeney to compel arbitration and (c) referred the matter for NASD arbitration. The parties agreed to stay arbitration pending a decision by this court. We affirm.
On September 21, 1991, plaintiff Robinlynn Sweeney and defendant Robert Sweeney were married. In 1999, Ms. Sweeney sold for $90,000 and $465,000, respectively, *57 a small business and a small office building she had purchased prior to the marriage and kept as separate property. Ms. Sweeney turned over those sale proceeds to RBC and directed RBC to open accounts with those monies in her name only. In connection with that arrangement, she signed a Gibraltar Securities Co. Margin Agreement which states in relevant part:
The undersigned agrees, and by carrying an account for the undersigned you agree, all controversies which may arise between us concerning any transaction or construction, performance or breach of this or any agreement between us, whether entered into prior, on or subsequent to the date hereof, shall be determined by arbitration.
Gibraltar Securities Co., later merged with Tucker Anthony Co., and subsequently with RBC. Mr. Sweeney was a broker at RBC, and he became the broker for Ms. Sweeney's account. He was already the broker for the couple's joint account and for two accounts held by RBC on behalf of the couple's minor children.
In April 2004, Robert and Robinlynn Sweeney entered into a Property Settlement Agreement (PSA) that was incorporated into their Dual Final Judgment of Divorce filed April 29, 2004. The PSA does not mention any of the parties' brokerage accounts, but it contains a standard mutual release clause in which the parties give up any and all claims that each might have against the other by reason of any matter. The PSA also recites each party's agreement not to "annoy, molest or otherwise interfere with the other party, nor with the peace and comfort of the other, nor with the person or business of the other."
On March 14, 2006, almost two years after the divorce, Ms. Sweeney filed with NASD (now FINRA) a Statement of Claim for Securities Arbitration against RBC, alleging, among other things, mismanagement of her accounts, breach of contract, breach of fiduciary duty and breach of the duty to supervise. In response, RBC filed in the Family Part of the Chancery Division in Morris County a post-judgment motion to intervene in the divorce action and to stay arbitration. RBC contended that as a result of Ms. Sweeney's Judgment of Divorce, her arbitration claims were barred by res judicata and by the entire controversy doctrine. RBC also claimed that it is a third-party beneficiary of the Sweeneys' Judgment of Divorce and that, under the doctrine of respondeat superior, the release of Mr. Sweeney released RBC. Ms. Sweeney filed a notice of cross-motion to compel arbitration.
At the motion hearing, the court recognized that the threshold question it had to address was whether Ms. Sweeney's claims were arbitrable. The court concluded that it was the court's role to decide the arbitrability of the issues. Accordingly, it decided that, pursuant to the Federal Arbitration Act at 9 U.S.C.A. 1-16 and controlling case law, Ms. Sweeney's claims against RBC were within the scope of the arbitration agreement and that the numerous issues raised by RBC in its motion to stay arbitration "go to the merits of its defenses against the claim." The court observed that there was no "reason why arbitrators could not entertain and decide [these] defenses." This appeal by RBC ensued.

I.
We agree with the motion court's determination that Ms. Sweeney's claims against RBC fall within the scope of their arbitration agreement. The language of the arbitration clause of the Margin Agreement is expansive, purporting to cover "all controversies which may arise ... concerning any transaction or construction, *58 performance or breach of ... any agreement between [the parties to the Margin Agreement]." New Jersey's strong public policy favoring arbitration is well stated in Lederman v. Prudential Life Ins. Co., Inc., 385 N.J.Super. 324, 897 A.2d 373 (App.Div.2006), cert. denied, 188 N.J. 353, 907 A.2d 1013 (2006) and Jansen v. Salomon Smith Barney, Inc., 342 N.J.Super. 254, 776 A.2d 816 (App.Div.2001), cert. denied, 170 N.J. 205, 785 A.2d 434 (2001). "New Jersey law comports with its federal counterpart in striving to enforce arbitration agreements." Jansen, supra, 342 N.J.Super. at 257, 776 A.2d 816 (citations omitted). Accordingly, "[a]n agreement relating to arbitration should thus be read liberally to find arbitrability if reasonably possible." Ibid. (citations omitted).

II.
RBC argues that Ms. Sweeney's arbitration claim is barred by res judicata or the entire controversy doctrine. Such issues are decided by the court in the first instance. Raritan Plaza I Assocs., L.P. v. Cushman & Wakefield, 273 N.J.Super. 64, 71, 640 A.2d 1205 (App.Div.1994). The entire controversy doctrine requires the joinder of "virtually all causes, claims, and defenses relating to a controversy between the parties engaged in litigation." Oltremare v. ESR Custom Rugs, Inc., 330 N.J.Super. 310, 314-15, 749 A.2d 862 (App. Div.2000) (citing Cogdell v. Hosp. Ctr., 116 N.J. 7, 15, 560 A.2d 1169 (1989)). The central consideration in determining whether a successive claim is barred by the entire controversy doctrine is whether the claim "arise[s] from related facts or the same transaction or series of transactions." DiTrolio v. Antiles, 142 N.J. 253, 267, 662 A.2d 494 (1995) (citing Malaker Corp. Stockholders Protective Comm. v. First Jersey Nat'l Bank, 163 N.J.Super. 463, 497, 395 A.2d 222 (App.Div.1978), certif. denied, 79 N.J. 488, 401 A.2d 243 (1979)).
RBC's reliance on Mustilli v. Mustilli, 287 N.J.Super. 612, 671 A.2d 653 (Ch.Div. 1995), and on cases addressing the joinder of marital tort claims in divorce actions is misplaced. Mustilli concerned the joinder of a legal-malpractice claim that arose out of legal representation in a divorce action, which was decided prior to the 1998 amendment to Rule 4:30A, at a time when the entire controversy doctrine encompassed the joinder of parties. See R. 4:30A (1997); see also Pressler, Current N.J. Court Rules, comment 4 on R. 5:1-2 (2008) ("The entire controversy problems have, however, been substantially ameliorated by the amendment of R. 4:30A to exclude the applicability of the doctrine to unjoined third parties.").
The entire controversy doctrine provides a mechanism to prevent fragmentation of litigation, Oliver v. Ambrose, 152 N.J. 383, 393, 705 A.2d 742 (1998). The doctrine does apply to family actions, Id. at 394, 705 A.2d 742, however, "[t]he application of the entire controversy doctrine requires us to consider fairness to the parties, as the `polestar of the application of the rule is judicial fairness.'" Id. at 395, 705 A.2d 742 (quoting DiTrolio, supra, 142 N.J. at 272, 662 A.2d 494). In considering fairness, we note that RBC was not a party to the divorce proceeding and, so far as we can discern, no issues concerning the management of the margin accounts were raised in the divorce action. Hence, RBC has not been prejudiced by any decision or disposition of any issues in the parties' divorce proceeding.
More importantly, Ms. Sweeney's claims against RBC arise, not out of her marital relationship with Mr. Sweeney, but rather out of her contractual relationship with RBC through its predecessor, Gibraltar Securities, Co. There is no indication that *59 RBC's handling of these assets was an issue that was disputed or raised by either party in the action for divorce, and RBC offers no equitable or legal reason to bar Ms. Sweeney for not having brought her securities claims against RBC in her action for divorce against her ex-husband.
Even though Mr. Sweeney personally managed the accounts as an employee of RBC, that does not alter the fact that the claims asserted by Ms. Sweeney arise under the Margin Agreement with RBC, which provides for arbitration. We note that in an affidavit filed in support of RBC's motion to intervene, Mr. Sweeney asserts that his ex-wife's claim is "in reality a suit against me, because my employer has a right to seek restitution from me toward any settlement or award involving an account I serviced." While it has been observed that "an agent may make himself individually responsible by engaging expressly to perform his principal's obligation or by pledging his own credit for payment of an express undertaking[,] ... if a contract is made with a known agent within the scope of his authority for a known or disclosed principal, the agent cannot be held liable thereon." Stopford v. Boonton Molding Co., Inc. 56 N.J. 169, 187, 265 A.2d 657 (1970). Thus, Mr. Sweeney's potential liability to RBC does not affect Ms. Sweeney's right to pursue her claims against RBC.

III.
RBC further argues that this court should follow the substantive law applied in a New York case, Merrill Lynch v. Benjamin, 1 A.D.3d 39, 766 N.Y.S.2d 1 (2003), because (1) neither New Jersey nor federal courts seem to have ruled on the issue of whether a property settlement in the context of a divorce decree precludes a subsequent arbitration claim against a spouse's employer; and (2) the agreement between Ms. Sweeney and RBC contain a New York choice of law.
In Benjamin, the plaintiff had filed an arbitration claim against his ex-wife's employer, a brokerage firm, claiming investment misconduct by his wife related to a joint brokerage account with rights of survivorship. Id. at 3. The wife had been the broker. The court noted that "[w]hile he might have openly reserved [the investment misconduct] claims against [his wife] and [the brokerage firm] for later disposition in another forum, plaintiff chose instead to raise them after the matrimonial action had finally resolved all issues relating to the joint brokerage account." Benjamin, supra, 766 N.Y.S.2d at 8.
The divorce proceeding in Benjamin was conducted in Connecticut. The court made various findings of fact, as reflected in the judgment of divorce, concerning the wife's responsibility for the diminution and dissipation of the couple's assets. The court found that "throughout the marriage [the wife] controlled most of the couple's finances, made virtually all the investment decisions, intermingled their jointly owned securities and funds ... with her own personal stock and funds ... and transferred some $40,000 of the couple's assets, without consideration, to her parents." Id. at 3-4. The Connecticut court assigned property according to those findings and ordered, among other things, that the ex-wife pay the ex-husband $80,000 from assets that she owned individually and to transfer to him half of her pension and retirement benefits and fifty-seven percent of her interest in an IRA. Id. at 4.
Consequently, the New York court determined that "the factual findings and the orders entered in the couple's divorce judgment reallocating the parties' resources indicate[d] that the claim of investment misconduct was raised in substance, though perhaps not in haec verba, and *60 addressed in that action." Id. at 8. Thus, the court held that "[plaintiff's] claim that [his ex-wife] fraudulently induced and misdirected the investment of his funds in their joint brokerage account [was] barred in res judicata." Id. at 8.
Unlike in Benjamin, there is no evidence in the case at bar that Ms. Sweeney raised the alleged financial misconduct during the divorce proceedings or that the court made any findings regarding the diminution or dissipation of the couple's assets. Neither is there any indication in the record that any alleged financial losses were considered in allocating property for equitable distribution. In fact, Ms. Sweeney's account had been derived from premarital assets and had been maintained separately. Consequently, that account was not subject to equitable distribution. N.J.S.A. 2A:34-23h. Likewise, it is unlikely that the parties or the court considered the children's accounts to be marital assets. Notably, in Benjamin, the New York court stated that the plaintiff could have reserved his "investment misconduct claims against [his wife] and [the brokerage firm] for later disposition in another forum," but he "chose instead to raise them after the matrimonial action had finally resolved all issues relating to the joint brokerage account." Benjamin, supra, 766 N.Y.S.2d at 4, 8. We are convinced that Benjamin does not control the facts of this case.

IV.
RBC contends that the release of Robert Sweeney, its agent, released RBC as the principal. RBC cites Soc'y Hill Condo. Ass'n, Inc. v. Soc'y Hill Assocs., 347 N.J.Super. 163, 789 A.2d 138 (App.Div. 2002) to support that contention. In Soc'y Hill, the court held that the plaintiff, a condominium association, had provided a broad release, purporting to release the limited partnership which had purchased the property for development, and "all who succeed to [the limited partnership's] rights and responsibilities." Hence, the release, which covered "any and all claims arising from [the] development, construction, improvement, repair or replacement of the Common Elements of Sections I and II of Society Hill Condominium," expressly protected the corporation which was the sole general partner in the limited partnership and protected as well the sole owner of that corporation. Id. at 174, 789 A.2d 138. Consequently, in that case, after releasing the limited partnership, the plaintiff was barred from the recovery of damages from the related entities for alleged construction defects. Id. at 167, 173, 789 A.2d 138.
Significantly, our Supreme Court has held that "the legal effect of a release on other parties should be determined by the intent of the parties to the release, with due consideration being given to whether the compensation paid was fully adequate." Cartel Capital Corp. v. Fireco of N.J., 81 N.J. 548, 559, 410 A.2d 674 (1980). Similarly, we have observed that "a release of a defendant will release him only in respect of those claims by those parties as are actually or intended to be encompassed thereby." Goncalvez v. Patuto, 188 N.J.Super. 620, 629, 458 A.2d 146 (App.Div.1983). "[A] release is merely a form of contract and the general rules that apply to contract interpretation apply to releases." Domanske v. Rapid-American Corp., 330 N.J.Super. 241, 246, 749 A.2d 399 (App.Div.2000).
In the PSA that was incorporated into their Dual Final Judgment of Divorce, Robert and Robinlynn Sweeney included two provisions that purported to release claims resulting from marital relationships and rights of inheritance. Those provisions state:

*61 RELEASE OF RIGHT
Each party hereby waives, releases, and relinquishes any and all rights that he or she may now have, or may hereinafter acquire, under the laws of the State of New Jersey or any other jurisdiction:
a) To share, as a result of the marital relationship, in the other party's estate upon the latter's death; or
b) To act as executor and/or administrator of the other party's estate or to participate in the administration thereof; or
c) Relating to dower or courtesy as provided by applicable laws.
. . .
MUTUAL RELEASE
Except that is herein to the contrary provided, the parties shall and do hereby mutually release, remiss, and forever discharge each other from any and all actions, suits, debts, claims, demands, and obligation whatsoever, both in law and in equity, that either of them ever had, now has, or may hereafter have, against the other upon or by reason of any matter, cause, or thing up to the date of the execution of the Agreement. It is the intention of the parties that henceforth there shall be, as between them, only such rights and obligations as are specifically provided in this Agreement.
As noted, these releases relate to marital and testamentary rights and other rights or claims personal to the divorcing parties. The releases do not purport to benefit others who may somehow stand in privity or succession to these parties. Plainly, the releases do not purport to release persons whose obligations arise from separate relations, contractual or otherwise.
In short, the case at bar is distinguishable from Soc'y Hill as to the nature of the relationship between the parties and the intended scope of the releases involved. RBC cites no case law in New Jersey, and we are aware of none, that states that the release of a spouse in a divorce proceeding automatically releases the spouse's employer from its independent contractual obligations.

V.
RBC contends that arbitration between Ms. Sweeney and RBC is barred by collateral estoppel. "`A party precluded from relitigating an issue with an opposing party ... is also precluded from doing so with another person unless he lacked full and fair opportunity to litigate the issue in the first action or unless other circumstances justify affording him an opportunity to relitigate the issue.'" Zirger v. Gen. Accident Ins. Co., 144 N.J. 327, 338, 676 A.2d 1065 (1996) (quoting United Rental Equip. Co. v. Aetna Life Cas. Ins. Co., 74 N.J. 92, 101, 376 A.2d 1183 (1977)). The party seeking to invoke the doctrine of issue preclusion bears the burden of demonstrating what was determined in the prior adjudication, and "reasonable doubts as to what was decided by a prior judgment should be resolved against using it as estoppel." Shtab v. Greate Bay Hotel & Casino, Inc., 173 F.Supp.2d 255, 261 (D.N.J.2001) (citations omitted).
In this case, RBC failed to establish that Mr. Sweeney's alleged mishandling or misconduct in relation to any of the brokerage accounts was raised, stipulated or adjudicated in the divorce proceeding. There is no evidence that the issues at bar have been litigated in any manner in a prior action. Thus, collateral estoppel does not apply.

*62 VI.
RBC's claim that it is a third-party beneficiary of the PSA is so lacking in merit that it does not warrant further discussion in a written opinion. See R. 2:11-3(e)(1)(E).

VII.
For the above reasons, the order of the Law Division is affirmed, and the matter is remanded to the Law Division for referral to arbitration.
NOTES
[1] Plaintiff-respondent Robinlynn Sweeney is designated as Robin L. Sweeney and Robin Lynn Sweeney in various documents in the appellate record. We shall refer to her by her correct name Robinlynn Sweeney.