**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is only binding on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0940-14T3

KAREN J. DREES,

    Plaintiff-Respondent,

v.

PETER T. DREES,

    Defendant-Appellant.

_____

Submitted September 13, 2016 — Decided August 28, 2017

Before Judges Gilson and Sapp-Peterson.

On appeal from the Superior Court of New
Jersey, Law Division, Bergen County, Docket
No. FM-02-162-13.

Peter T. Drees, appellant pro se.

Sunshine, Atkins, Minassian, Tafuri, D'Amato,
Beane & Buckner, PA, attorneys for respondent
(Jay R. Atkins and Janell N. Weinstein, on the
brief).

PER CURIAM

    Defendant Peter T. Drees appeals from the July 2, 2014 order

entering an Amended Dual Final Judgment of Divorce (AFJD) and the

October 6, 2014 order denying his motion for reconsideration of the July 9, 2014 order. We affirm both orders.

The parties were married in 2001. Two children were born of the marriage. In 2012, plaintiff filed a divorce complaint, seeking, among other reliefs, joint legal custody, primary residential custody, equitable distribution, alimony, child support, and legal fees. Defendant filed an answer and counterclaim. He sought primary residential custody, spousal and child support, and an award of counsel fees.

Pending dissolution, the parties engaged in significant pre-trial discovery and the court entered numerous orders pertaining to financial, custody, and parenting issues. In May 2014, the parties participated in an Intensive Settlement Conference "ISC", presided over by the Family Part presiding judge. After extensive negotiations, the parties reached a settlement on all but three issues. Plaintiff's counsel memorialized the agreement in a letter sent to defendant's attorney.

On May 22, 2014, counsel on behalf of the parties placed the terms of the settlement on the record. However, the parties agreed that any monies or credits owed would be submitted to an accountant and that the parties would be bound by the accountant's determination. They also agreed that any monies owed would be adjusted out of the proceeds from the sale of the former marital

residence (FMR); alimony would be fixed at one-third of the difference between their respective incomes, which, at the time, was represented to be a base salary of $173,000; and, any additional income defendant received in the form of bonuses would also be included in the percentage.

Next, the parties acknowledged that there were pensions and 401-Ks the parties acquired prior to the marriage. They agreed that each party would waive evaluations and claims to these accounts because there were no contributions made after the parties married. With regard to the pensions and 401-Ks accumulated during the marriage, it was agreed they "would be done via [a Qualified Domestic Relations Order (QDRO)]."

The parties also reached an agreement regarding their respective life insurance policies. Although they did not resolve the disposition of personal property, the parties agreed they would submit to arbitration, if necessary. Further, the parties acknowledged they resolved issues of parenting time and custody.

Counsel then put before the court the unresolved issues between the parties, which were being submitted for resolution at trial. The first issue related to an e-trade account in defendant's name, which plaintiff alleged defendant dissipated contrary to a July 2013 pendente lite order. The second issue related to plaintiff's application for retroactive pendente lite

relief as of the filing date of the divorce complaint. The third issue to be resolved by the court was whether plaintiff was entitled to additional pendente lite support, which, when initially ordered, was based upon defendant's imputed income of $125,000. Subsequent discovery revealed that defendant's base annual salary, exclusive of any bonus, was $173,000.

Both parties testified at trial. Thereafter, the court permitted the parties to file post-trial submissions. Plaintiff's counsel prepared a proposed Dual Final Judgment of Divorce. Plaintiff's counsel forwarded the proposed judgment to defense counsel, but received no response. Consequently, plaintiff's counsel submitted the proposed judgment to the court under the five-day rule, pursuant to Rule 4:42-1(c). Defense counsel thereafter formally objected to the proposed judgment.

On June 19, 2014, the court presided over a hearing during which outstanding issues related to the proposed judgment were addressed, including the duration of alimony and the retirement accounts. Defense counsel advised the court that the parties had agreed on the amount of alimony but not the term. Counsel stated that plaintiff's position was eight years, while defendant's position was seven years. The court responded: "Seven and [one-] half." Defense counsel stated: "That's what [plaintiff's counsel]

did. . . . But my client is adamant he would like a seven-year term based upon the facts."

Plaintiff's counsel stated: "That wasn't the deal." Defense counsel offered to have his client address the court, but the court stated that it was "not taking testimony, but . . . just making [judgment]." The court advised the parties to address the issue in the form of a post-judgment motion.

Defense counsel then addressed several retirement accounts, which plaintiff represented ended right at the beginning of the marriage. One account "was plaintiff's Time Warner pension or 401-K." Defense counsel explained:

> The way this reads is that those parties are waiving -- doing a QDRO or dividing them. Because they ended, these pensions ended -- virtually [ninety-percent] of them were premarital. That was presented at the four way conference. It was presented to [plaintiff's counsel via] letter. My client is not in agreement with that. He would like just the [marital] portions of these accounts divided.

Plaintiff's counsel responded:

> That wasn't the deal. The deal was and again we sent them a letter before we came here for trial. The deal was that my client stopped working within the first six or eight months of their marriage. And there were [s]ome accumulation by [defendant] of some pension rights for those period[s] [of] time[s] of the marriage. We waived them. That was the deal. We waived them. . . . I sent [defense counsel] a letter in May before the trial. No

5

objection, put it on the record here. No objection. . . . That was the deal.

In response to the court's inquiry whether the agreement had been placed on the record, defense counsel could not recall. He acknowledged that he received the letter from plaintiff's counsel and that he offered no objections to it. Nonetheless, he indicated to the court his "client's belief [] that the representation made was not accurate."

The court reviewed its notes from the trial and indicated that the notes were not helpful. The court told counsel that it was going to "sign the dual final [judgments] prepared by [plaintiff's counsel]," and indicated to defense counsel that "you'll have to file [a] motion for reconsideration if you feel it's something I can do." The court signed the judgment.

The next day, the court entered an order awarding plaintiff $25,000 in counsel fees. In its written statement of reasons appended to the order the court addressed the outstanding issues presented at trial on May 22, 2014.

The court first determined that plaintiff was not entitled to an adjustment of the pendente lite order. The court found that during the pendency of the litigation, defendant paid the mortgage, deposited $27,000 into a joint bank account, to which plaintiff had access, and "did in fact use to pay various bills by check. In addition, the [p]laintiff made ATM withdrawals from the joint

account." The court also found that defendant "paid various credit card charges on behalf of the family."

The court concluded: "Considering [p]laintiff's needs and the ability of [d]efendant to contribute to the family's needs in 2013[,] together with the division of assets, the [c]ourt finds that [p]laintiff is not entitled to an adjustment from the [date of separation] to May 14, 2013." Likewise, the court determined that plaintiff was not entitled to a pendente lite adjustment of support based upon defendant's anticipated gross income of $173,000 in 2014 because, "on balance . . . [defendant] made a fair contribution to family expenses from [the date of separation] to May 14, 2013."

The court determined that plaintiff was entitled to recover one-half of the repair costs undertaken at the former marital residence after the date of separation from defendant's share of the net proceeds. Further, the court concluded defendant failed "to demonstrate that the [e-trade] account was drawn down to pay family expenses." Consequently, the court ruled that plaintiff was entitled to "a credit of [fifty-percent] of the [e-trade] account of $84,101 or $42,050.50."

Finally, regarding attorneys' fees, the court considered the factors set forth in <u>Williams v. Williams</u>, 59 <u>N.J.</u> 229 (1971), including plaintiff's need; defendant's financial ability to pay;

and plaintiff's good faith in instituting or defending the action. After weighing these factors, the court found it appropriate for defendant to contribute $25,000 towards plaintiff's attorney's fees.

On July 2, 2014, following the trial judge's retirement and with the consent of counsel for both parties, another judge entered the AFJD, incorporating the trial judge's findings on the remaining issues tried before the court on May 22, 2014. Defense counsel consented to the form of judgment.

The judgment ordered defendant to pay $37,650 per year in alimony, for a term of seven and one-half years, along with other income-based payments in the event that defendant received a higher salary than the projected $173,000. It set defendant's child support obligation at either $318 or $305 per week, depending on the amount of overnight visits the children have with defendant. Additionally, it directed that disputes regarding the retirement accounts would be determined by a forensic accountant. Finally, in conjunction with the June 20, 2014 order, the judgment required defendant to pay $25,000 in attorney's fees, $12,936 for repairs to the former marital residence, and $42,050.50 for the e-trade account, totaling $79,986.50.

Thereafter, defendant, proceeding pro se, sought reconsideration of the June 20, 2014 order. Plaintiff filed

various cross-motions and consolidated motions for additional counsel fees. On August 29, 2014, the trial court heard oral argument on all of the pending motions. Specifically, defendant asked the court for arbitration on plaintiff's purported contribution to repairs to the former marital residence, based upon his contention plaintiff failed to provide evidence of her expenses. In addition, defendant requested that the court reverse its award to plaintiff for his alleged dissipation of the e-trade account and the award of counsel fees. In turn, plaintiff's counsel also requested additional counsel fees, noting that the trial judge awarded substantially less than the $138,000 requested.

In an order dated October 6, 2014, the court denied defendant's motion. In its written decision, the court determined that the trial judge provided a comprehensive analysis of the Williams factors, taking into consideration both defendant's bad faith and the parties' ability to pay based on their incomes. The court also noted that defendant's argument that plaintiff hid a trust from which funds were drawn to pay legal fees was "preposterous" because the trust "is the [p]laintiff's attorney's trust account, where the parties agreed to deposit an income tax refund. Plaintiff's counsel then divided the refund in half, and issued a check in the amount of $3395 to [both] parties."

A-0940-14T3

Regarding plaintiff's repairs to the former marital residence, the court found that defendant was seeking to arbitrate an issue after the parties had already conferenced the matter with the court and reached an agreement. Further, the court observed that "[d]efendant provided no evidence that the agreement reached was unfair or inequitable or that [the trial judge's] finding that [p]laintiff contributed to repairs after the date of separation was inaccurate."

Similarly, as to the e-trade account, the court determined that "[d]efendant provided no support for his argument that the court's finding was palpably incorrect or that the court failed to consider the significance of the probative evidence." Finally, the court found the trial judge weighed the appropriate factors before awarding counsel fees to plaintiff. The court then awarded plaintiff an additional $6650 in counsel fees as a result of the reconsideration motion.

On appeal, defendant raises three arguments: (1) the Family Part improperly proceeded to trial before resolving a fee dispute concerning a parenting coordinator; (2) the Family Part improperly entered the AFJD without holding a plenary hearing concerning plaintiff's pension and the duration of alimony; and (3) the Family Part used the wrong standard in denying defendant's motion for reconsideration.

10 A-0940-14T3

"The findings of the Family Part are entitled to particular deference in view of its 'special expertise in the field of domestic relations.'" Pressler & Verniero, <u>Current N.J. Court Rules</u>, comment 6.2 on <u>R.</u> 2:10-2 (2017) (quoting <u>Cesare v. Cesare</u>, 154 <u>N.J.</u> 394, 412-13 (1998)). In addition we have been particularly mindful of the special expertise of Family Part judges. <u>See</u> <u>Cesare</u>, <u>supra</u>, 154 <u>N.J.</u> at 412. Furthermore,

> [w]ith respect to dissolution matters, the Family Part has discretion in allocating marital assets to the parties in equitable distribution, . . . and an equitable distribution award will be affirmed as long as the trial court could reasonably have reached its result from the evidence presented and the award is not distorted by legal or factual mistake.
>
> [Pressler & Verniero, <u>supra</u>, comment 6.2 on <u>R.</u> 2:10-2 (citing <u>Borodinsky v. Borodinsky</u>, 162 <u>N.J. Super.</u> 437, 443-44 (App. Div. 1978); <u>Tannen v. Tannen</u>, 416 <u>N.J. Super.</u> 248, 276 (App. Div. 2010), <u>aff'd o.b.</u>, 208 <u>N.J.</u> 409 (2011)).]

Thus, we will not disturb a judgment entered by the Family Part "except upon the basis of a carefully reasoned and factually supported . . . determination, after canvassing the record and weighing the evidence, that the continued viability of the judgment would constitute a manifest denial of justice." <u>In re Adoption of a Child by P.F.R.</u>, 308 <u>N.J. Super.</u> 250, 255 (App. Div. 1998) (quoting <u>Baxter v. Fairmont Food Co.</u>, 74 <u>N.J.</u> 588, 597-98 (1977)); <u>See also</u> <u>In re Guardianship of J.T.</u>, 269 <u>N.J. Super.</u> 172, 188

11

(App. Div. 1993) (citing <u>Rova Farms Resort, Inc. v. Inv'rs Ins. Co. of Am.</u>, 65 <u>N.J.</u> 474, 483-84 (1974)).

These principles guide our consideration of defendant's contentions raised in this appeal. First, we address defendant's argument that the court erred by entering the AFJD on July 2, 2014, without having resolved the issue of defendant's liability for parenting coordinator fees to Dr. Mark Hatton. We disagree.

In an earlier proceeding before the court, defendant certified that he did not owe Dr. Hatton $30,624.55. Initially, the court determined that the question of fees owed was genuinely disputed, warranting a plenary hearing. However, the court later determined that "as [defendant] is asking relief of a third party who is not [a party] to [this] family proceedings[,] [d]efendant's motion, captioned <u>Dr. Mark Hatton v. Peter Drees</u>, should be filed in the Civil Division under [D]ocket [N]umber BER-L-1400-15."

We conclude there was no error in the court's refusal to consider defendant's dispute with the parenting coordinator in the pending matrimonial action. Although the dispute arose in the context of the parties' dissolution action, Dr. Hatton was not a party to the litigation, nor did he file a motion seeking intervention in the matrimonial action to address the issue of his outstanding fees. Rather, Dr. Hatton commenced a civil action in the Law Division under a separate docket, BER-L-1400-15, which the

court noted in its order of dismissal.  Cf. Sweeney v. Sweeney, 405 N.J. Super. 586, 593-94 (App. Div.), certif. denied, 199 N.J. 519 (2009).

Moreover, defendant's dispute with the parenting coordinator was irrelevant to any of the three outstanding issues before the court at the time of trial.  Indeed, during the trial, the only reference to Dr. Hatton arose in the context of the parties utilizing his office to drop off some of defendant's personal items.

Next, defendant argues that the judgment is unenforceable because the trial judge entered the order without addressing two outstanding issues, specifically the term of the alimony payments and a discrepancy regarding the retirement accounts.

At the June 19, 2014 proceeding, defense counsel advised the court that defendant wanted the marital portion of the retirement accounts divided and that his client was adamant in wanting to limit alimony to seven years, while plaintiff's position was that its duration should be eight years.  Plaintiff's counsel disputed defense counsel's claims and argued that the parties had agreed to the terms reflected in the proposed judgment he prepared.

We are persuaded the entry of judgment setting the duration of alimony at seven and one-half years reflects the court's considered judgment as to what was fair and equitable.  In reaching

this conclusion, we are cognizant that the June 19, 2014 hearing clearly reflects a dispute between the parties regarding the duration of alimony. We are equally mindful that the court's statement of "seven and [one-] half years" may have been its suggested resolution rather than a definitive disposition. Nonetheless, the determination that defendant shall pay alimony to plaintiff for seven and one-half years is a reasonable result, based upon the evidence before the trial judge, and was not "distorted by legal or factual mistakes." Tannen, supra, 416 N.J. Super. at 276.

One final observation regarding the duration of alimony. Defendant filed his motion for reconsideration one week after the court entered the AFJD. Plaintiff did not seek reconsideration of that portion of the judgment directing him to pay alimony for seven and one-half years.

Turning to the disposition of the retirement accounts, after defense counsel and plaintiff expressed different recollections as to what had been placed on the record on May 22, 2014, the court indicated: "Well, unfortunately my notes don't help us. I think what I have to do, because we don't have a transcript, is I'm going to sign the dual final [judgments] prepared by [plaintiff's counsel] and you'll have to file [a] motion for reconsideration if you feel it's something I can do."

14                                                          A-0940-14T3

A review of the May 22, 2014 record confirms the parties placed on the record their agreement regarding the respective retirement accounts. The AFJD incorporated these terms. Thus, the trial judge did not enter judgment without resolving this issue. There was no need to do so since both parties were present at the hearing, represented by counsel, and knowingly and voluntarily reached an agreement on the disposition of their retirement accounts.

Finally, defendant contends the court applied a more stringent standard for relief by requiring him to file a motion for reconsideration rather than resolving the disputed issues. We reject this argument as lacking in merit. We affirm the denial of defendant's motion for reconsideration for the reasons expressed by Judge McGrogan in the comprehensive and well-reasoned October 6, 2014 written decision appended to the order of the same date. We add the following comments.

At the June 19, 2014 hearing, the court candidly acknowledged that its notes were not helpful in resolving the dispute surrounding the retirement accounts. The court indicated that it was without the benefit of a "transcript," and invited defendant to seek reconsideration. Defendant suggests that had the court resolved the disputed issues before entering judgment, its decision would have been guided by the interest of justice standard

rather than the requirement of a reconsideration motion to identify matters or controlling decisions the court may have overlooked or to which it may have erred. R. 4:49-2.

Continuing the proceedings before entering a final judgment, as defendant urges, would not necessarily mean the court would have taken additional testimony as defendant presumes. Rather, it would have called for a review of the May 22, 2014 transcript, which unequivocally reveals the parties' agreement as to the disposition of their retirement accounts and the court's announcement of seven and one-half years on the duration of alimony. Consequently, the court would have been guided by the evidence in the record, which is consistent with the ultimate decision reached by the court. Thus, defendant suffered no prejudice by the trial judge's decision that he seek reconsideration.

Finally, as noted above, with the exception of the e-trade account, defendant's reconsideration motion raised issues other than the duration of alimony and the retirement accounts. Specifically, defendant sought reconsideration of the counsel fee award, the court's finding that the parties agreed to sell the marital home and divide the net proceeds equally, and the court's determination that the parties would equally divide defendant's e-trade account. Therefore, the additional counsel fees awarded

were not incurred because defendant sought reconsideration of the issues related to the duration of alimony and the disposition of the retirement accounts.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0940-14T3