[990 NYS2d 799]

In the Matter of the VILLAGE OF SOUTHAMPTON, Petitioner, v VILLAGE OF SOUTHAMPTON POLICE BENEVOLENT ASSOCIATION, INC., Respondent.

Supreme Court, Suffolk County, July 22, 2014

 

**APPEARANCES OF COUNSEL**

*Law Office of Vincent Toomey*, Lake Success, for petitioner.
*Davis & Ferber, LLP*, Islandia, for respondent.

**OPINION OF THE COURT**

PETER H. MAYER, J.

The motion is decided as follows: it is ordered that the petitioner's application by notice of petition (motion sequence No. 001), which seeks an order, pursuant to CPLR 7503 (b), permanently staying the arbitration demanded in the respondent's August 23, 2011 notice of demand for arbitration, is hereby granted and the arbitration is permanently stayed; and it is further ordered that the respondent's cross motion (motion sequence No. 002), which seeks an order compelling the petitioner to proceed with arbitration pursuant to CPLR 7503 (a), is hereby denied; and it is further ordered that counsel for the petitioner shall promptly serve a copy of this order upon counsel for the respondent via first-class mail, and shall promptly thereafter file the affidavit of such service with the County Clerk.

This CPLR article 75 proceeding arises from a demand for arbitration, dated August 23, 2011, which the respondent, Village of Southampton Police Benevolent Association (hereinafter PBA) filed with the New York State Public Employment Relations Board (hereinafter NYS PERB). In the demand for arbitration, the PBA asserts that it is seeking arbitration of a dispute pursuant to the grievance and arbitration procedure set forth in article VIII of the parties' collective bargaining agreement (hereinafter CBA) for the period from June 1, 2005 through May 31, 2010, which was amended by a memorandum of agreement covering the period from June 1, 2010 through May 31, 2013.

Christopher A. Broich had been employed by the petitioner, Village of Southampton, as a Sergeant with the Southampton Village Police Department. On or about December 13, 2007, he was terminated from such employment after a disciplinary hearing in which he was found guilty of 16 charges of misconduct and incompetence. Thereafter, Mr. Broich challenged the Village's decision pursuant to CPLR article 78. Mr. Broich's termination was affirmed by the Appellate Division, Second Department (see Matter of Broich v Village of Southampton, 70 AD3d 822 [2d Dept 2010]). Thereafter, the Court of Appeals denied Mr. Broich's leave to appeal (see Matter of Broich v Village of Southampton, 14 NY3d 712 [2010]).

Mr. Broich also filed claims with the Federal Equal Employment Opportunity Commission and in the U.S. District Court for the Eastern District of New York. In those matters, he essentially alleged that his termination violated his constitutional rights. The District Court, sua sponte and without notice, granted summary judgment to the Village and dismissed Mr. Broich's claims with prejudice (see Broich v Incorporated Vil. of Southampton, 2011 WL 284484, 2011 US Dist LEXIS 6954 [ED NY, Jan. 25, 2011, No. CV-08-0553 (SJF/ARL)]).[1] In addition to his other filings, Mr. Broich filed three charges with the New York State Public Employment Labor Relations Board against the PBA (his advocate in this proceeding). As part of those charges, Mr. Broich alleged that the PBA violated its duty of fair representation to him by failing to provide proper representation for him when the Village placed him on administrative leave pending the disciplinary charges that ultimately resulted in his termination. All of those charges were dismissed by the Employment Labor Relations Board Administrative Law Judge.

Thereafter, Mr. Broich filed another improper practice charge with the NYS PERB against the PBA on March 28, 2011, alleging that the PBA violated its duty of fair representation by not pursuing Broich's claim for benefits pursuant to General Municipal Law § 207-c (payment of salary, wages, medical and hospital expenses of policemen with injuries or illness incurred in the performance of duties). Previously, Mr. Broich had

---

1. After the submission of this petition and cross motion, the U.S. Court of Appeals, Second Circuit, affirmed the District Court in all respects, except to vacate the judgment insofar as relates to the sua sponte granting of summary judgment without notice and a fair opportunity for plaintiff to be heard. (See Broich v Incorporated Vil. of Southampton, 462 Fed Appx 39 [2d Cir 2012].)

demanded that the Village provide him with such benefits and other benefits under the CBA because of an injury he allegedly suffered while working for the Village in March 2006. Mr. Broich claimed that he was entitled to such General Municipal Law § 207-c benefits based upon a September 7, 2010 decision relating to his claim for workers' compensation benefits, as well as other documents that postdated his termination from the Village. The Village denied his request for such benefits on the grounds that he did not apply for those benefits at the time of his alleged injury and did not miss any work as a result. The Village also noted that his claims were untimely and, in any event, such purported claims would have ceased upon his termination from the Village on December 13, 2007. Mr. Broich's March 28, 2011 improper practice charge against the PBA was dismissed by the April 22, 2011 decision of NYS PERB's Director of Public Employment Practices and Representation.

Mr. Broich had apparently participated in certain rescue, recovery or cleanup operations pertaining to the September 11, 2001 World Trade Center bombings and made claims with the New York State and Local Police and Fire Retirement System (Retirement System). Those claims were related to an alleged disabling condition from an accident that was said to have occurred on an unspecified day and date. As a result of those claims, on April 26, 2011, Mr. Broich's application for World Trade Center accidental disability retirement benefits was approved. That approval is essentially the basis upon which Mr. Broich claims entitlement to retirement benefits from the Village. The petitioner Village argues, however, that as a former employee of the Village who was terminated for misconduct and incompetence after a formal disciplinary hearing, Mr. Broich is not entitled to retirement benefits from the Village. More specifically, the Village argues that the Retirement System is a division of the State Comptroller's Office without authority to undermine the Appellate Division's order which upheld the Village's termination of Broich, and that the Retirement System's decision to grant state retirement benefits does not change Broich's status as a terminated village employee.[2]

Through a series of demand letters and purported grievances to the Southampton Village Administrator, Village Police Captain, Village Mayor and Village Board, Mr. Broich and/or his counsel essentially opined that, because the Retirement System

---

2. The Court of Appeals denied Mr. Broich's motion for leave to appeal the Appellate Division's order.

found that Mr. Broich was permanently incapacitated from performing his World Trade Center duties, he is also entitled to retirement benefits from the Village pursuant to the parties' CBA. Each of Mr. Broich's demands and purported grievances were denied by the Village because his status as a terminated village employee is not changed by the Retirement System's determination to give him state pension benefits. Also, because Mr. Broich was terminated, he is not an employee permitted to invoke the grievance procedure set forth in the CBA. As a result of the Village's denial, the PBA filed a demand for arbitration with the NYS PERB, purportedly pursuant to article VIII (Grievance Procedure) of the CBA, claiming that the Village violated article IV (Insurance, Retirement, Etc.) of the CBA by failing to reinstate various village benefits to Mr. Broich after he was granted World Trade Center accidental disability retirement benefits on April 26, 2011. In relevant part, the demand for arbitration alleges that

"[t]he Village of Southampton violated article IV of the Collective Bargaining Agreement . . . by failing to:

"1) Reinstate medical insurance, dental insurance, and optical insurance to Sergeant Christopher A. Broich (Sgt. Broich) once he received disability retirement on April 26, 2011;

"2) Compensate Sgt. Broich for all accrued time including but not limited to sick time, bonus sick time, holiday, and vacation once he received disability retirement on April 26, 2011;

"3) Provide Sgt. Broich his retired identification card, retired shield, retired pistol permit and letter of necessity to Suffolk County Sheriff for pistol permit once he received disability retirement on April 26, 2011;

"4) Return to Sgt. Broich all handguns, all personal property including but not limited to leather jacket and ground zero boots, all breast bars, department commendations and awards once he received disability retirement on April 26, 2011."

In response to the demand for arbitration, the Village filed this petition to permanently stay arbitration pursuant to CPLR 7503 (b). The PBA cross-moved to compel arbitration pursuant to CPLR 7503 (a). For the reasons set forth herein, the Village's petition to stay arbitration is granted and the PBA's cross motion to compel arbitration is denied.

In relevant part, CPLR 7503 (c) provides that

> "[a] party may serve upon another party a demand for arbitration or a notice of intention to arbitrate, specifying the agreement pursuant to which arbitration is sought . . . . An application to stay arbitration must be made by the party served within twenty days after service upon him of the notice or demand, or he shall be so precluded."

CPLR 7503 (a) states in pertinent part that "[a] party aggrieved by the failure of another to arbitrate may apply for an order compelling arbitration."

The preamble of the parties' CBA clearly states that the PBA is the bargaining representative "for all members of [the PBA], consisting of all *full-time* police officers of the Southampton Village Police Department" (emphasis added). Likewise, with regard to the scope of the agreement, article I (Scope), § 3 recognizes the PBA "as the sole bargaining agent and representative for all police officers . . . *employed full-time* in the Southampton Village Police Department" (emphasis added). With respect to medical and other specified benefits, article IV (Insurance, Retirement, Etc.), § 1 makes clear that such benefits are applicable to "*full time employees* covered by this Agreement," while section 8 states that only an "*employee resigning in good standing* shall be entitled to [the delineated benefits]" (emphasis added).

It is clear that Mr. Broich did not "resign in good standing." Instead, he was terminated for cause after a full disciplinary hearing in which he was found guilty of 16 counts of misconduct and incompetence. Thereafter, his termination for cause as a full-time employee of the Village was upheld by the Appellate Division, Second Department. In confirming Mr. Broich's termination for cause, the Second Department specifically found that Mr. Broich's "insubordination, lying to his superiors, deserting his duty post, and failing to provide backup 'cannot be sanctioned since such behavior poses a serious threat to the discipline and efficiency of the police force' " (*Matter of Broich v Village of Southampton*, 70 AD3d 822, 823 [2d Dept 2010], quoting *Matter of DeVito v Culross*, 220 AD2d 747, 748 [2d Dept 1995]). The Second Department added that "[d]ismissal for any one of these acts would not be so disproportionate to the offense as to be shocking to one's sense of fairness" (*Broich*, 70 AD3d at 823 [citations omitted]). The Court of Appeals denied Mr. Broich's motion to appeal the Appellate Division's findings.

The Second Department's determinations effectively conclude that Mr. Broich was neither a "full time employee" nor an "employee resigning in good standing." Despite his claim of entitlement to the benefits of employees meeting those criteria, the higher Court's determination on Mr. Broich's claim has full res judicata effect on those issues.

> "Res judicata provides finality in the resolution of disputes to assure that parties may not be vexed by further litigation . . . Under New York's transactional approach to res judicata, once a claim is brought to final conclusion, all other claims arising out of the same transaction or series of transactions are barred, even if based upon different theories or even if seeking a different remedy" (*Matter of Allstate Ins. Co. v Williams*, 29 AD3d 688, 690 [2d Dept 2006]).

Furthermore, there are strong public policy considerations which require prior court judgments to be given preclusive effect over subsequent arbitrations (*see Matter of Tokio Mar. & Fire Ins. Co. v Allstate Ins. Co.*, 8 AD3d 492 [2d Dept 2004]; *Merrill Lynch, Pierce, Fenner & Smith v Benjamin*, 1 AD3d 39 [1st Dept 2003]). Indeed, "courts have the power to defend their judgments as *res judicata*, including the power to enjoin or stay subsequent arbitrations" (*Merrill Lynch, Pierce, Fenner & Smith v Benjamin*, 1 AD3d 39, 45 [1st Dept 2003] [citations omitted]).

Based upon the foregoing, pursuant to the principles of res judicata and the applicable provisions of the CBA, the petitioner's motion to permanently stay the arbitration demanded in the respondent's August 23, 2011 notice of demand is granted and the respondent's cross motion to compel the petitioner to proceed to arbitration is denied.