789 A.2d 138 (2002)
347 N.J. Super. 163
SOCIETY HILL CONDOMINIUM ASSOCIATION, INC., Plaintiff-Appellant/Cross-Respondent,
v.
SOCIETY HILL ASSOCIATES, A New Jersey Limited Partnership, AMS Associates, Inc., General Partner of Society Hill Associates, Stein Built Homes, Inc., A New Jersey Corporation, Arthur M. Stein, and Albert L. Stein, Defendants-Respondents/Cross-Appellants, and
Triad Associates, Inc., Mark F. Taconita, David M. Stein, Joseph Albert and June Baldwin, Defendants.
Superior Court of New Jersey, Appellate Division.
Submitted January 7, 2002.
Decided January 30, 2002.
*140 Owens & Wolf, attorneys for appellant/cross-respondent, (Matthew S. Wolf, Mount Laurel, of counsel and on the brief).
White & Williams, Westmont, attorneys for respondents/cross-appellants Society Hill Associates, AMS Associates, Inc., Stein Built Homes, Arthur M. Stein and *141 Albert L. Stein, (Peter T. Parashes and William J. Schmidt, of counsel and on the brief).
Before Judges HAVEY, BRAITHWAITE and COBURN.
*139 The opinion of the court was delivered by COBURN, J.A.D.
Plaintiff, a condominium association, sued the developer and related individuals and entities pursuant to the Condominium Act, N.J.S.A. 46:8B-1 to -38 (the "Act"). The suit was for damages to common elements resulting from various construction defects.
The condominium project was built in five phases and ultimately consisted of 375 residential units in forty-three buildings in Cherry Hill.
During a bench trial on liability, the trial court ruled against plaintiff on the ground of lack of standing with respect to damages that it determined were to individual units rather than to the common elements. It also ruled against plaintiff with respect to the first two phases on the basis of a release plaintiff gave to the developer long before this suit was filed and further ruled that the evidence of construction defects regarding those phases was inadmissible. In addition, the trial court ruled that the developer was not liable for certain site conditions and dismissed plaintiff's consumer fraud claim. Ultimately, the court found defendants liable for a number of construction defects that need not be detailed since they are not contested. A liability judgment was entered on June 22, 1998. Thereafter, a jury determined that the common-element construction defects had caused plaintiff damages amounting to $600,000. Interest was allowed and on February 9, 2000, final judgment was entered in favor of plaintiff and against the developer, "defendants Society Hill Associates, Ltd., AMS Associates, Inc., and Stein Built Homes, Inc., jointly, severally, and in the alternative, in the amount of" $935,776.
Plaintiff's appeal focuses on the liability judgment of June 22, 1998, taking issue with each of the trial court's adverse rulings noted above. Defendants filed a cross-appeal raising three points, none bearing directly on the jury's determination of damages. They contend that the trial court erred (1) in failing to give defendants credit against the award for insurance proceeds received by plaintiff for the same claims; and (2) in granting plaintiff interest on the jury award. They also appeal from an earlier ruling by another judge denying their motion for summary judgment on the basis of the entire controversy doctrine.
Because of the nature of the points raised, we will describe the relevant facts bearing on each point as we reach it, rather than following the usual course of setting forth all the facts now.

IPlaintiff's Lack of Standing
At the beginning of the trial, defendants filed a motion in limine to bar plaintiff from pursuing certain specific construction damage claims. Defendants argued that plaintiff lacked standing as to those claims because they involved damage to individual units rather than to common elements. Plaintiff conceded that the damages related to individual units but claimed that in each case either the nature of the damage or its specific location made it a common element damage under the Act and the master deed. The parties and the trial court treated the matter as if defendants had filed a motion for summary judgment, and the trial court ruled for defendants.
For purposes of the motion, the trial court accepted plaintiff's description of the *142 damages in question as follows: unit doors and window frames were out of square and binding; interior unit drywall ceilings and walls were damaged by water infiltration and had cracks; interior unit floors had "settled," and stairs were "unlevel," "bouncy" and "creaky"; unit "garage man doors" (referring to the door leading from a unit to its garage) had defective door frames; and interior unit walls had "nail pops" and were loose and bulged.
Under the Act, a condominium association may sue the developer for construction defects related to the common elements, Siller v. Hartz Mountain Assoc., 93 N.J. 370, 377, 461 A.2d 568, cert. denied, 464 U.S. 961, 104 S.Ct. 395, 78 L.Ed.2d 337 (1983), and a unit owner may sue the developer "to safeguard his interests in the unit he owns." Id. at 382, 461 A.2d 568. While there are occasions when a unit owner may sue the developer with respect to common elements, id. at 381-82, 461 A.2d 568, the association may not sue the developer for damages to a unit. N.J.S.A. 46:8B-12 and -14. There is no dispute with respect to those fundamental propositions. Rather, the question is whether the identified damages excluded by the trial court were damages to common elements or damages to a unit. In other words, the question becomes what is the physical extent of a unit.
"The physical extent of [a unit] depends on what has been included in the common elements." Siller, supra, 93 N.J. at 382, 461 A.2d 568. Whether an item is a common element "may be ascertained by examination of the statutory definition and the master deed." Ibid. The Siller Court also recognized that
defective conditions in the common elements may also result in injury to the unit owner and damages to his personal property and the unit.... The unit owner's right to maintain an action for compensation for that loss against the wrongdoer is not extinguished or abridged by the association's exclusive right to seek compensation for damage to the common element[s].
[Ibid.]
The Act defines common elements as follows:
(i) the land described in the master deed;
(ii) as to any improvement, the foundations, structural and bearing parts, supports, main walls, roofs, basements, halls, corridors, lobbies, stairways, elevators, entrances, exits and other means of access, excluding any specifically reserved or limited to a particular unit or group of units;
(iii) yards, gardens, walkways, parking areas and driveways, excluding any specifically reserved or limited to a particular unit or group of units;
(iv) portions of the land or any improvement or appurtenance reserved exclusively for the management, operation or maintenance of the common elements or of the condominium property;
(v) installations of all central services and utilities;
(vi) all apparatus and installations existing or intended for common use;
(vii) all other elements of any improvement necessary or convenient to the existence, management, operation, maintenance and safety of the condominium property or normally in common use; and
(viii) such other elements and facilities as are designated in the master deed as common elements.
[N.J.S.A. 46:8B-3(d) (emphasis added).]
The inclusion within common elements in subparagraph "(ii)" of the "main walls" *143 and "roofs" implies that material further to the interior of a unit would be part of the unit. That subparagraph's exclusion from common elements of "entrances, exits and other means of access ... specifically reserved or limited to a particular unit" casts substantial doubt on plaintiff's claim of standing to pursue the defects to the unit doors. Finally, as a general matter the thrust of this section of the Act is to define common elements in general as those elements existing or intended for common use.
An understanding of the distinction between common and unit elements under the Act is enhanced by consideration of the respective authority it gives for maintenance and repairs as between the association and the unit owner. The association has the duty of maintaining and repairing the common elements, N.J.S.A. 46:8B-14(a), and assessing the unit members for the cost thereof as "common expenses." N.J.S.A. 46:8B-14(b). On the other hand, a unit owner is prohibited from repairing or altering common elements. N.J.S.A. 46:8B-18. If we accepted plaintiff's position in this case, no unit owner would be able to correct the defects in question or sue the developer for damages because of them. Given the nature of the defects, all essentially to the interior of the units, that would be an absurd result.
Plaintiff's reliance on the master deed is misplaced. In particular, its claim of standing is based on section 6 of the master deed, which describes a unit as follows:
Each Unit consists of:
(i) the volumes or cubicles of space enclosed by and measured horizontally and vertically from the unfinished inner surfaces of the perimeter interior walls, ceilings, and floors of that Unit, including doors, windows and vents;
(ii) all interior dividing walls and partitions located within the Unit (including the space occupied by such walls or partitions) excepting those interior walls and partitions located within the Unit which divide one Unit from another, or are denoted on exhibit "B" as load bearing; and
(iii) the decorated inner surfaces of said perimeter walls including the decorated inner surfaces of any load bearing interior walls located within the Unit, floors and ceilings consisting of paint and/or wallpaper, paneling, floor tiles and other floor coverings, and all other finishing materials affixed or installed as a part of the physical structure of the Unit and all immediately visible fixtures, appliances, mechanical systems, air conditioner compressor, and equipment installed and for the sole and exclusive use of the Unit, commencing at the point of disconnection from the structural body of the Building and from utility lines, pipes or systems serving the Unit.... A garage shall be considered part of the Unit.

[Emphasis added.]
Plaintiff concedes that exterior doors, "garage man doors," and windows are part of the unit under section 6 but contends that the frames for those items are not. That degree of literalism is contrary to the thrust of the master deed and entirely inconsistent with the respective rights of the association and the unit owner under the Act. Although doors and windows may be purchased separately from their frames, it is common knowledge that they are often purchased as a unit. Surely if a unit owner can repair or replace a window or a door, which cannot be done by the association since those items are part of the unit, the related frames come, as well, within the province of the owner.
Another literalism is plaintiff's attempt to distinguish between paint or wallpaper placed on the drywall walls and ceilings *144 and the drywall itself. Apart from the lack of commonsense (a ruling in favor of the association would deprive a unit owner of the ability to repair the drywall in his unit while repainting or repapering), we are satisfied that the reference in subsection "(iii)" to "all other finishing materials affixed or installed as part of the physical structure of the Unit" includes the drywall. Thus, all of the claims respecting the drywallthe "nail pops," water damage, cracks, looseness and bulgingare not maintainable by the association. We are satisfied, as well, that the defects affecting the stairs and floors also relate to "finishing materials" and are thus part of the units. Even if they are not finishing materials, they still are so much a portion of the interior of the unit that it would make no sense to find that they were common elements that could not be repaired by a unit owner.
The distinction between a unit and the common elements has been helpfully summarized in the following manner:
One easy way to visualize a condominium unit is as a cube of air, the tangible boundaries of which are usually the finished side of the interior sheetrock, ceilings and floors. While many condominiums vary this definition slightly (driven, in part, by allocating maintenance responsibilities), the condominium unit is generally seen by owners as the "inside" of their structure while the shell and "outside" of the building is a common element.
[Powell on Real Property § 54A.01[2] 11-13 (2001).]
That description accords with the Act and with the thrust of the master deed and clearly supports our view that all of the claims at issue are of a type that only individual unit owners may pursue against a developer.[1] In other words, these are not matters of "common interest"; rather, they are in the nature of "individual grievances" necessarily left to litigation brought by individual unit owners. See Siller, supra, 93 N.J. at 378, 461 A.2d 568 (quoting Crescent Pk. Tenants Assoc. v. Realty Eq. Corp. of N.Y., 58 N.J. 98, 109, 275 A.2d 433 (1971)).
IIThe Release as to Phases I and II
Defendant Society Hill Associates, Ltd. ("SHA"), a limited partnership, purchased the subject property in 1978 in Cherry Hill. Defendant AMS Associates, Inc. ("AMS"), the sole general partner in SHA, and at the time a wholly-owned subsidiary of defendant Stein Built Homes, Inc. ("SBH"), began construction of the fivephase condominium complex. After the completion of Phases I and II, plaintiff asked for the performance of additional work on those phases. In consideration of the completion of that work, plaintiff provided SHA with a release signed May 19, 1993, which read, in pertinent part, as follows:
I [the Association] release and give up any and all claims and rights which I may have against you [Society Hill Associates]. This releases all claims, including those of which I am not aware and those not mentioned in this Release.

*145 This Release applies to claims resulting from anything which has happened up to now. I specifically release the following claims:
[A]ny and all claims arising from your development, construction, improvement, repair or replacement of the Common Elements of Sections I and II of Society Hill Condominium, as those Common Elements are defined in the Master Deed.
....
3. Who is Bound. I am bound by this Release.... This Release is made for your [Society Hill Associates] benefit and all who succeed to your rights and responsibilities, such as your heirs or the executor of your estate.
In 1984, AMS merged into defendant SBH, which completed construction of the remaining phases. In the Plan of Merger, the entities agreed that SBH would receive all of the liabilities and assets of AMS. Defendants Albert L. and Arthur Stein were officers of AMS or SBH. Since plaintiff has not offered any argument regarding their personal liability, we assume that its claim has been abandoned as to them. Matter of Bloomingdale Conval. Ctr., 233 N.J.Super. 46, 48 n. 1, 558 A.2d 19 (App.Div.1989) (an issue not briefed is deemed waived). In any case, it has no merit. See McBride v. Minstar, Inc., 283 N.J.Super. 471, 497-98, 662 A.2d 592 (Law Div.1994), aff'd o.b. sub nom. McBride v. Raichle Molitor, USA, 283 N.J.Super. 422, 424, 662 A.2d 567 (App.Div.), certif. denied, 143 N.J. 319, 670 A.2d 1061 (1995).
Relying on Breen v. Peck, 28 N.J. 351, 146 A.2d 665 (1958), plaintiff, while admitting that the release protects SHA, contends that neither AMS nor SBH are within its reach. But that case involved independent tortfeasors and is inapposite. AMS and SBH were not sued as independent tortfeasors. Rather, their liability was purely derivative based on their legal relationship as general partner to SHA, a limited partnership. The release was given to SHA and extends by its own terms to "all who succeed to your rights and responsibilities." Under McBride, supra, the release of an agent releases the principal. 283 N.J.Super. at 497-98, 662 A.2d 592. Therefore, at the time the release was given it protected AMS as the general partner of SHA and SBH as the owner of AMS. Moreover, SBH, as a successor in interest, "`retain[ed] the same rights as the original [general partner], with no change in substance.'" Domanske v. Rapid-American Corp., 330 N.J.Super. 241, 248, 749 A.2d 399 (App.Div.2000) (citation omitted). Therefore, we affirm that portion of the order of June 22, 1998, dismissing all of plaintiff's claims relating to Phases I and II. We note in passing that plaintiff's argument that the evidence bearing on Phase I and Phase II defects should have been admitted in this trial is without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).
IIIThe Site Conditions
Plaintiff's civil engineering expert testified that certain aspects of the systems controlling water runoff had been negligently designed by the architect, identified by the parties as defendant Mark F. Taconita, who was employed by defendant Triad Associates, Inc. ("Triad"). Before trial, plaintiff entered into a settlement with Taconita and Triad for an undisclosed sum. Nonetheless, plaintiff pursued the claim against the remaining defendants on the theory of breach of warranty. At the end of plaintiff's case, the trial court dismissed the breach of warranty claim as untimely, a ruling with which the plaintiff does not take issue. However, plaintiff thereafter argued that *146 it was entitled to pursue the negligent design claim against the remaining defendants on the theory of respondeat superior.
In its brief, plaintiff states without citation to the record that it "offered deposition transcript testimony of one of the parties to show that the architect who designed the condominium was an employee of the developer." What its counsel actually said was: "Judge, it's in the transcripts of the depositions ... That Taconita was an employee up to [I] believe, 1980. That's in evidence. It was in evidence before the motions were made." There was no offer of such deposition testimony during the trial and none has been provided to us. Thus, there was no evidence that Taconita, or for that matter, Triad, were employees or agents of any of the defendants. Consequently, the doctrine of respondeat superior cannot be employed as a basis for defendants' vicarious liability. Nor, for that matter, is there any indication that the settlement did not provide plaintiff with a full recovery on this aspect of the case. Thus, the trial court was entirely correct in dismissing this claim.

IVThe Consumer Fraud Act
Without citing any authority, plaintiff devotes two brief sentences to this claim, merely asserting that it was entitled to pursue a consumer fraud action pursuant to N.J.S.A. 56:8-1 et seq. because "the developer of the project had obtained a release pertaining [to] the first two phases of the project [which] was never disclosed to any purchasers who purchased units after 1983." Since the release was given by plaintiff, we cannot conceive of any basis on which the plaintiff could maintain this claim. As the trial court recognized, if those facts give rise to any claim at all, it would belong to the unit owners to whom the disclosure had not been made. Moreover, while this issue is mentioned in plaintiff's brief, it has not been "briefed." Therefore, we deem it waived. Matter of Bloomingdale Conval. Ctr., supra, 233 N.J.Super. at 48 n. 1, 558 A.2d 19.

VDefendant's Entitlement to Credit
The credit sought by defendants relates to a $600,000 settlement between plaintiff and Home Owners Warranty Insurance Company ("HOWIC") under a policy issued to plaintiff pursuant to the New Home Warranty and Builders' Registration Act. N.J.S.A. 46:3B-1 to -20. Plaintiff acknowledges that HOWIC, which apparently is in receivership, has paid $420,000 towards satisfaction of that settlement. Defendants assert that plaintiff's notice of claim against HOWIC shows that it was seeking recovery against HOWIC for the same defects that were the subject of the instant lawsuit. Plaintiff responds by asserting that the claim against HOWIC was for major structural defects, as defined by the HOWIC policy, and that the claims at issue were for other defects. In the liability trial, the court was not asked to make any findings with respect to whether any defect was a major structural defect under the policy. Nor was that issue submitted to the jury that determined damages. Although, on the motion for credit, the trial court agreed with plaintiff, its basis for doing so is not entirely clear.
Because of various deficiencies in defendants' presentation of this issue in the trial court and here, we cannot reverse the denial of the credit.
The first deficiency is that defendants deprived the trial court of jurisdiction to consider this issue. The pertinent facts may be summarized briefly. Final judgment was entered in this case on February 9, 2000. Defendants filed their notice of appeal on March 3, 2000. Without *147 applying to this court for permission to proceed in the trial court, defendants apparently filed their motion for the credit and the matter was argued in the trial court on March 17, 2000.
From the time "an appeal is taken," apart from certain exceptions which do not pertain to this case, "the supervision and control of the proceedings on appeal ... shall be in the appellate court." R. 2:9-1(a). Further applications in the trial court to modify the judgment may only occur with leave of the appellate court. Ibid.; see also Manalapan Realty, L.P. v. Township Comm. of Manalapan, 140 N.J. 366, 376, 658 A.2d 1230 (1995). Since defendants sought their relief in the trial court without our direction after filing their appeal, the trial court did not have jurisdiction on this aspect of the case.
The next deficiency, and one which renders review impossible, is that defendants have failed to include in their appendix the notice of motion filed in the trial court and whatever papers were submitted in support thereof. Thus, for example, we do not have a copy of the HOWIC insurance policy, the claim form submitted by plaintiff to HOWIC, which defendants contend demonstrates that this lawsuit involved the same defects as those submitted to HOWIC, or any evidential materials relating to the HOWIC settlement or which might otherwise support defendants' position.
A party on appeal is obliged to provide the court with "such other parts of the record ... as are essential to the proper considerations of the issues." R. 2:6-1(a)(1)(H); R. 2:6-3.
Without the necessary documents, we have no basis for determining that some or all of the defects that were the subject of this case were also the subject of the HOWIC settlement.
Since defendants sought relief in the trial court after it had been deprived of jurisdiction by their own action and thereafter presented the matter to us in a manner which rendered review on the merits impossible, we have no alternative but to affirm.[2]

VIPrejudgment Interest
Prejudgment interest may be awarded on contract claims in accordance with equitable principles. Bak-A-Lum Corp. of Am. v. Alcoa Bldg. Prods., Inc., 69 N.J. 123, 131, 351 A.2d 349 (1976). An appellate court "should not disturb an exercise of discretion involving an award of prejudgment interest unless it represents a manifest denial of justice." Coastal Group v. Dryvit Systems, 274 N.J.Super. 171, 181-82, 643 A.2d 649 (App.Div.1994) remanded on other grounds, 147 N.J. 574, 688 A.2d 1050 (1997) (citing A.J. Tenwood Assocs. v. Orange Senior Citizens Housing Co., 200 N.J.Super. 515, 525, 491 A.2d 1280 (App.Div.), certif. denied, 101 N.J. 325, 501 A.2d 976 (1985)).
Defendants do not take issue with the trial court's calculation of the interest. Rather, they contend that the equities did not support the award either in whole or in part.
Defendants assert in their appellate brief that this was "a long and unique litigation that had delays, many of which were not due to the conduct of the parties in general or [defendants] in particular." They claim that the proceedings were "stayed for ten months ... pending the decisions of the warranty carriers," and *148 that an intervening appeal filed by plaintiff caused a delay of some two years. Finally, they assert that the plaintiff's request for numerous adjournments caused substantial delays in reaching a final verdict. Plaintiff's brief takes issue, in various ways, with all of those assertions.
Unfortunately for defendants, on this issue we are again confronted with an inadequate presentation of the critical facts. Just as occurred with respect to their credit claim, defendants have not included in their appendix the notice of motion filed in the trial court or any supporting certifications that might demonstrate a factual basis for our interfering with the trial court's discretion on this issue. Since we do not have all the facts, we are in no position to weigh the equities in a manner that would justify interference with the trial court's discretion.
Furthermore, as occurred with the claim for a credit, discussed in Section V, defendants raised their objection to the award of interest at a time when the trial court no longer had jurisdiction. R. 2:9-1(a).
For all those reasons, we affirm that portion of the judgment adding pre-judgment interest.

VIIThe Entire Controversy Doctrine
The complaint was filed on October 16, 1989. Shortly thereafter, defendants filed a motion for summary judgment on the ground that the action was barred by the entire controversy doctrine. They relied on the following previously filed lawsuits:
(1) A Chancery Division action filed on February 29, 1998, by plaintiff against defendants demanding the turnover of documents, including plans and specifications of the condominium complex so that plaintiff could determine whether it had grounds for an action in damages against them. Pursuant to Rule 4:5-1, appended to the complaint was a certification stating "that future action or arbitration proceedings may be undertaken but a decision in that regard must await the receipt of additional information including, but not limited to, the construction plans and specifications for the Project." The action was resolved by a judgment entered on the return day of the order to show cause which directed the turnover.
(2) An action by two unit owners filed on May 13, 1988, against plaintiff and defendants seeking damages for construction defects. Plaintiff filed a cross-claim against defendants for indemnification and contribution. The record does not reveal a resolution of this case.
(3) An action filed by SBH on June 23, 1988, against plaintiff and members of its board of trustees seeking damages for libel and interference with business relationships. The record does not reveal a resolution of this case.
After carefully considering the record and briefs, we are satisfied that defendants' entire controversy argument is without sufficient merit to warrant discussion in a written opinion, R. 2:11-3(e)(1)(E), and we affirm substantially for the reasons expressed by the motion judge in his oral opinion of January 19, 1990.
Affirmed.
NOTES
[1] Perhaps it is worth noting that the Uniform Common Interest Ownership Act (1994) defines "Unit Boundaries" in part as follows:

Except as provided by the declaration:
(1) If walls, floors, or ceilings are designated as boundaries of a unit, all lath, furring, wallboard, plasterboard, plaster, paneling, tiles, wallpaper, paint, finished flooring, and any other materials constituting any part of the finished surfaces thereof are a part of the unit, and all other portions of the walls, floors, or ceilings are a part of the common elements.
[U.L.A. Common Interest Ownership Act § 2-102 (1994).]
[2] Our conclusion, which was required by the procedural anomalies, should not be taken as expressing any opinion on the unbriefed question of defendants' right to seek further relief in the trial court under Rule 4:50.