# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1239-18T3

J.H.,[1]

    Plaintiff-Respondent,

v.

C.H.,

    Defendant-Appellant.

_____

Submitted October 8, 2019 – Decided October 15, 2019

Before Judges Accurso and Rose.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Mercer County, Docket No. FV-11-0193-19.

John William Hartmann, attorney for appellant.

Respondent has not filed a brief.

PER CURIAM

---

[1] We use initials to protect the confidentiality of the parties. R. 1:38-3(d)(9).

Defendant C.H. appeals a final restraining order (FRO) entered against her under the Prevention of Domestic Violence Act (PDVA), N.J.S.A. 2C:25-17 to -35, based on criminal mischief, N.J.S.A. 2C:17-3. We affirm.

The facts were established at a one-day bench trial. Both parties represented themselves and testified; defendant presented the testimony of an additional witness. No documents were introduced in evidence by either party.

Plaintiff J.H. is defendant's uncle. The parties lived together for six or seven years, at least twenty-eight years ago. At the time of the incident that gave rise to the restraining order, plaintiff lived around the corner from the house in which defendant resided with plaintiff's mother, who is also defendant's grandmother (family residence).

On July 28, 2018, plaintiff visited the family residence to see his mother, who was expected to return home from a rehabilitation facility. While plaintiff was outside, defendant "pull[ed] up in [her] car and start[ed] verbally cussing [him] out for no apparent reason." Hurling a barrage of expletives, defendant warned plaintiff to stay away from the family residence. Defendant then ran into the family residence, returned outside with a "two-by-four," and struck plaintiff's truck causing "[a] little dent."

Plaintiff returned to his home. At some point that same day, defendant arrived with her son, who "barged" into plaintiff's house and engaged in a physical altercation with plaintiff's son. Wielding a two-by-four, defendant "bust[ed]" plaintiff's windows "out of the house." Plaintiff paid $120 to repair the windows. Because he "left everything in the car[,]" plaintiff did not produce an estimate or receipt at trial.

Plaintiff testified he "called the police immediately."[2] Sometime before the FRO was granted, plaintiff told defendant's brother he "would drop the [temporary] restraining order if [defendant] apologized and fix[ed] the window."

In response to the judge's inquiry as to why he needed an FRO, plaintiff testified:

> In case of the attitude, if her attitude don't change, you know what I mean. I come around there and she get to acting foolish like she did for no apparent reason it might happen again, you know what I mean . . . . I'm moving along with this girl. I love this girl. It's [sic]

---

[2] According to the FRO, plaintiff filed a domestic violence complaint on August 6, 2018. Defendant's appendix does not include the domestic violence complaint nor the temporary restraining order (TRO). Although defendant failed to provide the full record on appeal pursuant to Rule 2:5-4(a), which might ordinarily prompt us simply to dismiss the appeal, see Rule 2:8-2, or affirm the order under appeal, see Society Hill Condo. Ass'n, Inc. v. Society Hill Assocs., 347 N.J. Super. 163, 178 (App. Div. 2002), we are confident we have enough of the record to undertake meaningful appellate review.

A-1239-18T3

my niece. I don't know where that came from. It was clear out the blue, you know what I mean . . . .

Plaintiff also said he had spoken with defendant a few days before the incident and there was "[n]o problem" at that time.

Defendant offered a different version of the encounter. She said the parties argued the night before the incident, when defendant accused plaintiff of stealing his mother's unspecified checks. Although defendant acknowledged plaintiff came to the family residence, she denied striking his truck with a two-by-four. Defendant also denied smashing plaintiff's windows, claiming she did not leave the family residence because a worker was "fix[ing] up the house[.]"

The worker initially testified defendant was not present when plaintiff arrived at the family residence. The worker later acknowledged he did not know whether defendant was inside the family residence when plaintiff arrived, and "there could have been another point during the day when she left and [the worker] wouldn't know about it . . . ."

After hearing the evidence presented at trial, the court entered an FRO against defendant. Finding plaintiff's testimony credible, the court determined defendant struck plaintiff's truck, and caused $120 in damages by breaking the windows of his home. The court noted defendant acknowledged an ongoing dispute between the parties and her encounter with plaintiff at the family

residence, while her witness "candidly could not testify whether she did or did not leave [the family residence] that day." Ultimately, the court found defendant had committed the predicate act of criminal mischief by a preponderance of the evidence.

Addressing whether plaintiff established the need for an FRO, the court specifically acknowledged the lack of prior domestic violence history between the parties. Nonetheless, the court found "[t]he dispute apparently concern[ed] family matters or family issues that ha[d] existed prior to the [incident date], at least in the view of [defendant]." As a result of that "source of conflict[,]" the court found plaintiff feared defendant "might take further action against him . . . ." The court elaborated: "So I believe that there is some immediate danger[] to person or property due to . . . the issues that have either [sic] come to a head and the volatility of those issues. These parties will still have ongoing involvement as there is a pending criminal matter." Accordingly, the judge granted the FRO.

On appeal, defendant contends the trial court's determination that she committed the predicate act of criminal mischief was not supported by the evidence adduced at the hearing, and there was no evidence supporting its finding that plaintiff needed the protection of an FRO.

5

Our scope of review is limited when considering an FRO issued by the Family Part following a bench trial. See D.N. v. K.M., 429 N.J. Super. 592, 596 (App. Div. 2013). "[W]e grant substantial deference to the trial court's findings of fact and the legal conclusions based upon those findings." Ibid. (citing Cesare v. Cesare, 154 N.J. 394, 411-12 (1998)). We will not disturb the court's factual findings and legal conclusions "unless [we are] convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice." Cesare, 154 N.J. at 412 (citation omitted).

Deference is particularly appropriate where, as here, the evidence is largely testimonial and hinges upon a court's ability to make assessments of credibility. Ibid. It is axiomatic that the judge who observes the witnesses and hears the testimony has a perspective the reviewing court simply does not enjoy. See Pascale v. Pascale, 113 N.J. 20, 33 (1988) (citation omitted).

When we address questions of law, however, a "trial judge's findings are not entitled to that same degree of deference if they are based upon a misunderstanding of the applicable legal principles." N.T.B. v. D.D.B., 442 N.J. Super. 205, 215 (App. Div. 2015) (citation omitted). The appropriate standard of review for conclusions of law is de novo. S.D. v. M.J.R., 415 N.J. Super.

6                                                                    A-1239-18T3

417, 430 (App. Div. 2010) (citing Manalapan Realty, LP v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)).

The entry of an FRO requires the trial court to make certain findings, pursuant to a two-step analysis. See Silver v. Silver, 387 N.J. Super. 112, 125-27 (App. Div. 2006). Initially, the court "must determine whether the plaintiff has proven, by a preponderance of the credible evidence, that one or more of the predicate acts set forth in N.J.S.A. 2C:25-19(a) has occurred." Id. at 125. The trial court should make this determination "in light of the previous history of violence between the parties." Ibid. (quoting Cesare, 154 N.J. at 402). As long as the court "at least consider[s] that factor in the course of its analysis[,]" it "is not obligated to find a past history of abuse before determining that an act of domestic violence has been committed in a particular situation . . . ." Cesare, 154 N.J. at 402.

Secondly, the court must determine "whether a restraining order is necessary, upon an evaluation of the factors set forth in N.J.S.A. 2C:25-29(a)(1) to -29(a)(6), to protect the victim from an immediate danger or to prevent further abuse." Silver, 387 N.J. Super. at 127 (citing N.J.S.A. 2C:25-29(b) (stating, "[i]n proceedings in which complaints for restraining orders have been filed, the court shall grant any relief necessary to prevent further abuse")); see also J.D.

v. M.D.F., 207 N.J. 458, 476 (2011). Those factors include – but are not limited to – "[t]he previous history of domestic violence between the [parties], including threats, harassment and physical abuse[,]" N.J.S.A. 2C:25-29(a)(1), and "[t]he existence of immediate danger to person or property . . . ." N.J.S.A. 2C:25-29(a)(2).

In the present case, plaintiff alleged defendant committed criminal mischief, one of the predicate acts set forth in the PDVA. N.J.S.A. 2C:25-19(a)(10) (citing N.J.S.A. 2C:17-3).[3] An individual is guilty of criminal mischief if he or she "[p]urposely or knowingly damages tangible property of another . . . ." N.J.S.A. 2C:17-3(a)(1).

Although defendant acknowledges the trial court found plaintiff's testimony credible, she claims plaintiff failed to submit documentary evidence, such as photographs and receipts substantiating the damage. Defendant also claims plaintiff failed to produce his son as a witness, despite plaintiff's contention that his son was attacked by defendant's son in plaintiff's home. For

---

[3] Plaintiff also alleged defendant committed terroristic threats, N.J.S.A. 2C:25-19(a)(3) (citing N.J.S.A. 2C:12-3), and harassment, N.J.S.A. 2C:25-19(a)(13) (citing N.J.S.A. 2C:33-4). Without elaborating, the trial court found plaintiff failed to prove those predicate acts.

the first time on appeal, defendant contends plaintiff failed "to explain why [he] waited almost eleven days to file a [c]omplaint seeking a restraining order."

While we recognize plaintiff did not introduce documents in evidence nor produce witnesses at trial, the court found his testimony credible in the absence of that supporting proof. Notably, the court also cited defendant's testimony, acknowledging not only that she was present at the family residence when plaintiff arrived on the day of the encounter, but also the parties had argued the previous day about her grandmother's checks.[4]

Nor do we find any merit to defendant's contentions that plaintiff failed to demonstrate the need for an FRO because there was no prior history of domestic abuse between the parties, and plaintiff merely sought the order to change defendant's "attitude." The trial court's analysis aptly included whether there were a past history of abuse between the parties, even though the court did not find that factor. Cesare, 154 N.J. at 402. Importantly, the court determined the issues between the parties were volatile and their relationship was ongoing. The

---

[4] As noted above, defendant failed to provide the TRO and domestic violence complaint on appeal. Although we glean from the FRO that the complaint was filed nine days after the incident, we decline to consider the relevance, if any, of plaintiff's delay in filing the complaint because that issue was not presented to the trial court. See State v. Galicia, 210 N.J. 364, 383 (2012) ("Generally, an appellate court will not consider issues, even constitutional ones, which were not raised below.").

pending criminal matter – along with the fact that defendant continued to reside with plaintiff's mother – underscored those findings and the judge's determination that plaintiff feared defendant "might take further action against him." Seeking a change in his niece's attitude apparently was borne of plaintiff's fear of recurrence.

In sum, having evaluated the testimony of both parties and defendant's witness, the trial court found the evidence sufficient to satisfy both prongs of the <u>Silver</u> analysis. Given our deferential standard of review, we find no basis to disturb that determination.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1239-18T3