**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3473-23

BENJAMIN TORSIELLO,

    Plaintiff-Appellant,

v.

LADISLAV MATHIS,

    Defendant-Respondent.

_____

> Submitted July 29, 2025 – Decided August 22, 2025
>
> Before Judges Rose and Marczyk.
>
> On appeal from the Superior Court of New Jersey, Law Division, Monmouth County, Docket No. DC-001330-22.
>
> Benjamin Torsiello, appellant pro se.
>
> Respondent has not filed a brief.

PER CURIAM

    Self-represented plaintiff Benjamin Torsiello appeals from a May 31, 2024 Special Civil Part order denying his summary action for ejectment against

defendant Ladislav Mathis.  For the reasons that follow, we vacate the order and remand for further proceedings consistent with this opinion.

This appeal has its genesis in a residential real estate contract between the parties.[1]  We summarize the relevant facts and recite the tortured procedural history in some detail from the limited record provided on appeal.

For an unspecified time period, defendant leased and resided at premises located in Howell from plaintiff and his wife (premises or property).  In 2016, plaintiff and his wife agreed to sell the premises to defendant under an installment contract.  Dated April 18, 2016, the "Contract for Sale of Real Estate" provides a $369,000 purchase price, with a $40,000 deposit due from defendant upon signing.  The contract further states plaintiff and his wife "will hold a 20[-]year mortgage at 6% with [defendant] remitting monthly payments of principal and interest totaling $2,386.24."[2]  A payment schedule was annexed to the contract.

---

[1]  Inexplicably, although the contract designates the sellers as plaintiff and his wife, Teresa Torsiello, she was not named a party in plaintiff's counseled summary action.

[2]  Another provision of the contract provides the "monthly payment of $3,500 includes the payment of principal and interest on the mortgage, the cost of the insurance coverage[,] and any remaining money will be applied to reduce the principal amount due on the mortgage."

A-3473-23

The contract further provides defendant's "mortgage payment is due on the first of every month." An $85 late fee is permitted "after 5 days or by the 6th of the month if payment was not received." As to missed payments, the contract states, "[i]f payment is not received for two consecutive months or buyer owes 2 months['] back rent the contract will be null and void and the property ownership reverts back to the sellers."

The contract also designates May 16, 2016 as "the estimated date for the closing" and states "[b]oth parties will fully cooperate so the closing can take place on or before the estimated date."

The penultimate paragraph, titled "Complete Agreement," provides in relevant part: "This Contract is the entire and only agreement between the Buyer and the Seller. . . . The Contract can only be changed by an agreement in writing signed by both Buyer and Seller."

We glean from the record the agreement was drafted by an attorney who represented both parties. Plaintiff and his wife signed the contract on May 1, 2016; defendant on June 7, 2016 – after the closing date stated in the contract.

On January 26, 2022, plaintiff and his wife, through another attorney,[3] served defendant a notice to quit terminating his "lease" as of January 31, 2022 for causing damage to the property. On February 9, 2022, counsel served another notice to quit terminating defendant's "lease" as of February 14, 2022. Defendant remained in the premises.

In March 2022, plaintiff's lawyer filed a verified complaint in support of plaintiff's application for an order to show cause (OTSC), seeking a writ of possession to remove defendant from the property. With the assistance of counsel, defendant answered the complaint and asserted affirmative defenses and a counterclaim.

The parties' disputes were resolved by an agreement memorialized in a May 4, 2022[4] "Consent Order for Possession" signed by their attorneys and the trial court. The following paragraphs are pertinent to this appeal:

> 4. Defendant will continue to pay monthly installments of $3[,]500 as they become due.
>
> 5. Defendant will also pay all electric bills as they become due.

---

[3] During an ensuing hearing before the present judge, the lawyer worked in the same office as the attorney who "tried to negotiate th[e] contract originally."

[4] The order included in the record is undated. The terms of the agreement were placed on the record during a May 4, 2022 hearing.

A-3473-23

6. Defendant will pay to defend . . . [p]laintiff in all municipal and state actions regarding violations at the property and will fully indemnify [p]laintiff for all fines and penalties incurred.

7. Contract of Sale is modified as follows: Defendant will obtain his own financing and pay remaining balance to [p]laintiff and conclude the purchase of the [p]roperty. Closing must occur by April 30, 2023.

8. In the event of any breach of this contract, [d]efendant shall have 7 days to cure. If breach is not cured within 7 days of the breach, parties consent to the immediate entry of an Order for Possession and if . . . defendant(s) fail to vacate the premises . . . plaintiff may seek the issuance of a Writ of Possession from the Special Civil Part Clerk's Office, directing the County Sheriff to remove . . . defendant(s) within 14 days of the issuance of the Writ of Possession, upon payment of [the] applicable fee for same[.]

Apparently, on June 21, 2022, plaintiff sought a writ of possession for defendant's violation of the consent order. Plaintiff claimed defendant failed to pay utilities and plaintiff's legal fees for defending municipal and state actions regarding the property. Two days later, a writ of execution was filed. For reasons that are not clear from the record, another judge (second trial judge) found no breach and dismissed plaintiff's action.[5]

---

[5] Plaintiff's appellate appendix does not include the second trial judge's order and decision. We glean the disposition from the colloquy between plaintiff's counsel and the present judge during a September 21, 2023 hearing and the

The following year, plaintiff's counsel filed another application for an OTSC.[6] On September 21, 2023, yet another judge (third trial judge) heard argument on plaintiff's OTSC. Because the closing had not yet occurred and defendant failed to pay utilities and plaintiff's counsel fees on the municipal action, plaintiff sought a writ of possession.

Defense counsel countered plaintiff "[wa]s not proceeding in good faith." He noted defendant "provided the court with voluminous records indicating that all payments were up to date." He further noted the problems defendant had securing a mortgage, including one lender's insistence that the closing date set forth in the contract of sale contained "an expire[d] date." In particular, defense counsel claimed the lender needed "a contract with a closing date . . . after the date that the parties sign[ed the contract of sale]." Expressing his client's intention to purchase the property, defense counsel sought sixty days to obtain a mortgage and close on the property.

judge's May 31, 2024 decision citing plaintiff's June 13, 2023 certification in support of his writ of possession. Plaintiff's appendix does not include his certification.

[6] Plaintiff's appellate appendix neither includes his submission in support of his application for an OTSC nor defendant's responsive pleadings.

6

A-3473-23

During the hearing, plaintiff's wife testified defendant "is paying the $3,500 but not all the other[ costs] . . . agreed upon."  Plaintiff's counsel argued defendant was afforded one year under the consent order to secure financing but made no effort to do so until March 23, 2023 and sought additional time.

Noting "the only thing necessary is . . . a new contract of sale with . . . a valid closing date" in the future, the judge found "the easiest thing to do . . . is to set a closing date."  The judge further found if the property was not closed by that date and the electric bills and counsel fees were not paid under the terms of the consent order, he would enter a judgment of possession.[7]

On October 2, 2023, defense counsel sent correspondence to the third trial judge seeking clarification of his September 22, 2023 order.  Defense counsel reiterated his client's "lender needed a contract with an updated closing date . . . to secure financing" and "the financing process stalled" because plaintiff "chang[ed] the purchase price from $369,000 to $544,000."  In his responding October 3, 2023 correspondence, plaintiff's counsel claimed "defendant breached the modified contract . . . by failing to close by April 30, 2023."  Plaintiff's counsel asserted the September 22, 2023 order "mandated the parties

---

[7] The memorializing order is not included in plaintiff's appellate appendix.

A-3473-23

to enter into a 'new' contract, allowing . . . plaintiff to renegotiate the purchase price to reflect the current market value."[8]

During an October 18, 2023 hearing, counsel elaborated on their dueling positions. The third trial judge noted, during the September 23, 2023 hearing, plaintiff did not claim "[the original] purchase price was no longer accept[able]." The judge explained he did not anticipate "another contract was going to be negotiated," which would involve "appraising the property." The judge scheduled a plenary hearing. In his ensuing decision, the judge explained the purpose of the hearing was "to develop a record of the course of dealing between the parties from the inception of the real estate contract on April 28 [sic], 2016 to the present time."[9]

The hearing spanned three trial days between November 16, 2023 and February 29, 2024. Plaintiff and his wife testified on plaintiff's behalf. Defendant testified on his own behalf and called an expert in the mortgage industry. The parties submitted written summations and the judge heard closing

---

[8] Neither correspondence is included in plaintiff's appellate appendix. Again, we glean the substance of the letters from the judge's May 31, 2024 decision.

[9] A memorializing order is not contained in plaintiff's appellate appendix.

A-3473-23

arguments on April 18, 2024. The judge reserved decision and thereafter issued the May 31, 2024 order and accompanying rider.

The judge denied plaintiff's summary action for ejectment and ordered additional conditions as stated in the rider. Specifically, the judge ordered the parties to "execute a revised contract for sale of the property . . . includ[ing] the original purchase price of $369,000." The judge also ordered defendant to "secure financing and settle the remaining balance of the $369,000 mortgage within sixty" days of the revised contract. However, if defendant failed to do so, the judge required defendant to continue "making timely monthly payments towards the outstanding mortgage held by . . . plaintiffs while he continue[d] to make a good faith effort to obtain financing." The judge further ordered defendant to "pay all the electric bills and any other outstanding fees in accordance with the [c]onsent [o]rder," and plaintiff's $3,887.50 counsel fees within thirty days. The judge did not, however, determine whether defendant breached the terms of the consent order.

In his overlapping points on appeal, plaintiff maintains defendant breached the terms of the consent order by failing to: close the premises by April 30, 2023, as extended by his attorney to June 15, 2023; pay his counsel fees regarding the municipal and state actions; and pay the utility bills when

9

due.  Plaintiff also contends the judge erroneously considered defendant's counterclaim, which was resolved by the consent order.  He seeks reversal of the May 31, 2024 order, reinstatement of the consent order, and a remand for entry of an order of possession and writ of possession.

As a preliminary matter, ordinarily the deficiencies noted in plaintiff's appellate appendix might cause us to dismiss his appeal, see In re Zakhari, 330 N.J. Super. 493, 495 (App. Div. 2000), or affirm the order under review, see Soc'y Hill Condo. Ass'n, Inc. v. Soc'y Hill Assoc., 347 N.J. Super. 163, 178 (App. Div. 2002).  However, we decline to do so in this case because the trial judge's opinion falls short of the requirements set forth in Rule 1:7-4 (a).  The Rule requires "[t]he court . . . find the facts and state its conclusions of law . . . on every motion decided by a written order that is appealable as of right."

As our Supreme Court has long recognized, the absence of an adequate expression of a trial judge's rationale "constitutes a disservice to the litigants, the attorneys[,] and the appellate court."  Curtis v. Finneran, 83 N.J. 563, 569-70 (1980) (quoting Kenwood Assocs. v. Bd. of Adj. Englewood, 141 N.J. Super. 1, 4 (App. Div. 1976)).  Moreover, "[n]aked conclusions do not satisfy the purpose of R[ule] 1:7-4."  Id. at 570.  "Rather, the trial court must state clearly its factual findings and correlate them with the relevant legal conclusions" as

10

required by the Rule.  Ibid.  "The absence of adequate findings . . . necessitates a reversal."  Heinl v. Heinl, 287 N.J. Super. 337, 347 (App. Div. 1996).  Further, under Rule 2:5-1(d), a trial court may amplify its reasons for its decision within thirty days of receiving the notice of appeal.  The judge did not do so here.

In the rider, the third trial judge summarized the parties' arguments concerning breach of the consent order but made no findings as to whether defendant breached the parties' agreement memorialized by the May 4, 2022 consent order.  Instead, for reasons that are unclear from the record, the judge ignored the consent order and considered equitable relief apparently sought in defendant's counterclaim.  As such, the judge rewrote the terms of the parties' agreement memorialized by the consent order.  See Kieffer v. Best Buy, 205 N.J. 213, 223 (2011) (warning courts should not "rewrite a contract for the parties better than or different from the one they wrote for themselves").  Additionally, although the judge listed the names of the witnesses who testified at the hearing, he made no factual or credibility findings concerning their testimony.

Under the circumstances presented, we have no alternative but to reverse the order under review and remand for findings of fact and conclusions of law as to whether defendant breached the May 4, 2022 consent order.  In remanding

this matter, the trial court shall fully consider the matter in view of the governing legal principles and determine whether defendant breached the consent order at issue. The court's decision shall include detailed findings of fact, correlated to comprehensive conclusions of law, addressing the issues raised by the parties in plaintiff's present application.

By discharging its duty in this regard, the court will ensure "the litigants have been heard and their arguments considered. Justice requires no less." Bailey v. Bd. of Rev., 339 N.J. Super. 29, 33 (App. Div. 2001).

Reversed and remanded. Jurisdiction is not retained.

I hereby certify that the foregoing is a true copy of the original on file in my office.

*M.C. Harley*

Clerk of the Appellate Division