# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2430-23

L.R.,[1]

    Plaintiff-Respondent,

v.

D.P.,

    Defendant-Appellant.

_____

        Submitted May 28, 2025 – Decided August 28, 2025

        Before Judges Firko and Bishop-Thompson.

        On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Warren County, Docket No. FV-21-0341-24.

        The Tormey Law Firm, LLC, attorneys for appellant (Louis J. Keleher, on the brief).

        Laddey, Clark & Ryan, LLP, attorneys for respondent (Janet C. Lucas, on the brief).

PER CURIAM

---

[1] We use initials to protect the parties' privacy. R. 1:38-3(d)(10).

Defendant D.P. appeals from a final restraining order (FRO) entered on March 14, 2024, pursuant to the Prevention of Domestic Violence Act (PDVA), N.J.S.A. 2C:25-17 to -35. After a plenary hearing, the Family Part judge found defendant committed the predicate act of harassment, N.J.S.A. 2C:33-4. Defendant claims the court erred in finding harassment because plaintiff L.R. failed to meet her burden; the actions described by plaintiff are akin to "ordinary domestic contretemps" as the text messages concern their minor child; and the court incorrectly assessed plaintiff's credibility. Having reviewed the record, we reject defendant's contentions and affirm substantially for the reasons expressed in Judge John Burke's comprehensive oral decision.

I.

We glean the following facts from the limited record presented during the two-day bench trial. Plaintiff applied for, and was granted a temporary restraining order (TRO), alleging harassment because of persistent, and sometimes threatening, text messages sent by defendant.[2]

---

[2] The record on appeal does not include the TRO or all evidence admitted at trial. See generally R. 2:6-1(a) (requiring the appellant's appendix, or the parties' joint appendix, include the parts of the record "as are essential to the proper consideration of the issues"). We do not discern, however, that defendant's failure to provide all the evidence presented at the plenary hearing prevents a full and fair analysis of the issues presented on appeal. See generally

During the two-day FRO hearing, both parties provided testimony and only plaintiff was represented by counsel. Both parties presented documentary evidence and defendant presented video evidence.

We summarize the testimony and evidence presented to provide context for our analysis of defendant's arguments. Plaintiff and defendant were in a prior two-year dating relationship. The parties lived together from July 2018 to September 2019 in Maine. A daughter was born from that relationship in 2019. Plaintiff testified to two acts of domestic violence committed by defendant—a threatened assault if she called the police and a prior assault—in Maine. After the entry of a no-contact restriction was issued against defendant, plaintiff left Maine and relocated to New Jersey.

Plaintiff described incidents prior to January 2024 that she claimed constituted acts of domestic violence after she relocated to New Jersey. Plaintiff previously obtained both a TRO against defendant and an FRO, which was dissolved in 2021. Plaintiff subsequently sought two TROs in December 2023

Soc'y Hill Condo. Ass'n, Inc. v. Soc'y Hill Assocs., 347 N.J. Super. 163, 177-78 (App. Div. 2002) (explaining a reviewing court may decline to address an issue where the parts of the record pertinent to the issue are not included in the record on appeal).

A-2430-23

because of text messages sent by defendant; however, according to plaintiff it was denied because the text messages were not threatening.

Plaintiff testified that, during three distinct periods of time, she was bombarded with text messages from defendant throughout the day and night. Pursuant to a court order, the parties were directed to communicate only about their daughter.

From December 15 through December 31, 2023, plaintiff received a significant number of text messages from defendant. By way of example, in an exchange between plaintiff and defendant on December 17, 2023, plaintiff stated: "Took you two days to ask how she's doing. Stop blowing up my phone and go away." About fifteen minutes later, defendant responded: "Or I have you arrested for parental interference and contempt of a [c]ourt order." Plaintiff replied: "I'm getting a restraining order because you are threatening and scary." In a series of text messages described by plaintiff as "nonstop" on December 18, 2023, plaintiff told defendant to "stop texting [her]," that "[she] was done" and to "leave [her] alone." As of December 20, 2023, plaintiff sent defendant a text message to "go through [her] attorney." Rather than block defendant, plaintiff did not respond to the many text messages. As a consequence, at 9:30 p.m. on

4

December 23, 2023, the police appeared at plaintiff's home to conduct a welfare check.

Defendant resumed the onslaught of text messages between January 1 through January 12, 2024. Specifically, on January 11, defendant sent thirty-one text messages to plaintiff. According to plaintiff, while at work on January 12, 2024, she received in excess of forty messages from defendant between 6:00 a.m. to 9:33 a.m. The transcript indicates that plaintiff's testimony regarding these periods was corroborated by the corresponding text messages, which were admitted into evidence. Plaintiff testified that she believed that defendant would not stop texting her unless the court issued an FRO.

Defendant's testimony largely contradicted plaintiff's account of the parties' prior history in Maine. Instead, defendant asserted plaintiff was an unfit parent and struggled with alcohol-related issues. He denied any physical assault or threats of physical assault. Rather, he claimed plaintiff assaulted him and offered two videos: one showing plaintiff's arm moving back and forth and another showing plaintiff slapping defendant's arm.

Defendant claimed plaintiff interfered with his parenting time after she relocated to New Jersey. He further claimed that he had not seen any "harassing and rage fueled messages" on January 12, 2024, as he insisted no such messages

5

existed. Lastly, defendant testified that plaintiff fabricated the allegations in the TRO and contained hearsay statements.

Following the parties' testimony, the judge rendered a decision from the bench. The judge first addressed credibility, finding that plaintiff was more credible due to her demeanor, accurate recollection of facts, and the overall consistency of her testimony. In contrast, Judge Burke found defendant lacked credibility, noting that he avoided questions, failed to provide satisfactory explanations, gave contradictory testimony, and was argumentative with plaintiff during cross-examination.

Judge Burke reviewed plaintiff's testimony concerning prior incidents between the parties and concluded there was a prior history of domestic violence in Maine. The judge also noted that the two videos offered by defendant showed prior acts by plaintiff when viewed in the light most favorable to defendant.

Relying on the two-prong test articulated in Silver v. Silver, 387 N.J. Super. 112 (App. Div. 2006), Judge Burke analyzed the facts as applied to plaintiff's allegation of harassment under N.J.S.A. 2C:33-4(a) and (c). The judge determined the numerous text messages were sent to alarm or seriously annoy plaintiff. Judge Burke concluded that, considering the totality of the

6

circumstances, plaintiff had proven harassment by a preponderance of the evidence.

As to the second Silver prong, Judge Burke evaluated the statutory factors set forth in N.J.S.A. 2C:25-29(e)(1) to (6). Based on his "feel for the case" and observing the arguments between the parties, the judge concluded that "the necessity for a[n] [FRO] is imminent." Accordingly, plaintiff's application for an FRO was granted. This appeal followed.

II.

Our scope of review of Family Part orders is limited. C.C. v. J.A.H., 463 N.J. Super. 419, 428 (App. Div. 2020). We owe substantial deference to the Family Part's findings because of its special expertise in family matters. Cesare v. Cesare, 154 N.J. 394, 413 (1998). We must "accord substantial deference to Family Part judges, who routinely hear domestic violence cases and are 'specially trained to detect the difference between domestic violence and more ordinary differences that arise between couples.'" C.C., 463 N.J. Super. at 428 (quoting J.D. v. M.D.F., 207 N.J. 458, 482 (2011)). That deference is particularly strong when the evidence is largely testimonial and rests on a judge's credibility findings. Gnall v. Gnall, 222 N.J. 414, 428 (2015).

7

We will not disturb a trial judge's factual findings unless "they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice." Cesare, 154 N.J. at 412 (quoting Rova Farms Resort, Inc. v. Invs. Ins. Co. of Am., 65 N.J. 474, 484 (1974)). However, we do not accord such deference to legal conclusions, and review such conclusions de novo. Thieme v. Aucoin-Thieme, 227 N.J. 269, 283 (2016).

The purpose of the PDVA is to "assure the victims of domestic violence the maximum protection from abuse the law can provide." G.M. v. C.V., 453 N.J. Super. 1, 12 (App. Div. 2018) (quoting State v. Brown, 394 N.J. Super. 492, 504 (App. Div. 2007)); see also N.J.S.A. 2C:25-18. Thus, the PDVA authorizes judges to issue an FRO against a person "after a finding . . . is made that an act of domestic violence was committed by that person." N.J.S.A. 2C:25-29(a).

When determining whether to grant an FRO, a trial judge must engage in a two-step analysis. Silver, 387 N.J. Super. at 125-26. "First, the judge must determine whether the plaintiff has proven, by a preponderance of the credible evidence, that one or more of the predicate acts set forth in N.J.S.A. 2C:25-19[(a)] has occurred." Id. at 125. Second, the judge must determine that a

restraining order is necessary to provide protection for the victim. Id. at 126-27.

As part of that second step, the judge must assess "whether a restraining order is necessary, upon an evaluation of the fact[or]s set forth in N.J.S.A. 2C:25-29[(a)](1) to -29[(a)(7)], to protect the victim from an immediate danger or to prevent further abuse." J.D., 207 N.J. at 475-76 (quoting Silver, 387 N.J. Super. at 127). Although the judge is not required to incorporate all the factors in its findings, "the [PDVA] does require that 'acts claimed by a plaintiff to be domestic violence . . . be evaluated in light of the previous history of violence between the parties.'" Cesare, 154 N.J. at 402 (omission in original) (quoting Peranio v. Peranio, 280 N.J. Super. 47, 54 (App. Div. 1995)). While the second inquiry "is most often perfunctory and self-evident, the guiding standard is whether a restraining order is necessary, upon an evaluation of the factors set forth in N.J.S.A. 2C:25-29[(]a[)](1) to - 29[(]a[)]([7]), to protect the victim from an immediate danger or to prevent further abuse." Silver, 387 N.J. Super. at 127; see also J.D., 207 N.J. at 475-76.

Here, the judge determined that defendant committed the predicate act of harassment under N.J.S.A. 2C:33-4(a) and (c), which reads:

9

a person commits a petty disorderly persons offense [of harassment,] if, with purpose to harass another, he [or she]:

a. Makes, or causes to be made, one or more communications anonymously or at extremely inconvenient hours, or in offensively coarse language, or any other manner likely to cause annoyance or alarm;

. . . .

c. Engages in any other course of alarming conduct or of repeatedly committed acts with purpose to alarm or seriously annoy such other person.

A "'finding of a purpose to harass may be inferred from the evidence presented,' and we have observed that '[c]ommon sense and experience may inform that determination.'" J.D., 207 N.J. at 477 (alteration in original) (quoting State v. Hoffman, 149 N.J. 564, 577 (1997)). Under subsection (a), the judge is required to find the following three elements: (1) defendant made or caused to be made a communication; (2) defendant's purpose in making or causing the communication to be made was to harass another person; and (3) the communication was in one of the specified manners or any other manner similarly likely to cause annoyance or alarm to its intended recipient. Hoffman, 149 N.J. at 576. "[A]nnoyance" is defined as to "disturb, irritate, or bother." Id. at 580.

A-2430-23

While under subsection (c), the judge is required to find "proof of a course of conduct . . . that is alarming or it may be a series of repeated acts if done with the purpose 'to alarm or seriously annoy' the intended victim." J.D., 207 N.J. at 478 (quoting N.J.S.A. 2C:33-4(c)). "[S]eriously annoy" is defined as "to weary, worry, trouble or offend." Ibid. (quoting Hoffman, 149 N.J. at 581). Harassment under subsection (c) may be construed as "as repeated communications directed at a person that reasonably put that person in fear for his [or her] safety or security or that intolerably interfere with that person's reasonable expectation of privacy." State v. Burkert, 231 N.J. 257, 284-85 (2017).

We are satisfied that Judge Burke considered the extensive testimony elicited during the hearing and trial and fully assessed the credibility of the parties. As the judge concluded, defendant committed acts of harassment based on the frequency and content of his repeated text messages, threats, and the welfare check by police at plaintiff's home prompted by defendant's call. The judge also found that defendant's text messages used offensively coarse language in a manner likely to cause annoyance or alarm. Based on his assessment of the parties and the nature of the parties' relationship, the judge appropriately concluded that the text messages had been deliberately sent with

11

the purpose to harass plaintiff. Those findings satisfy the elements of harassment under N.J.S.A. 2C:33-4(a) and (c).

We also conclude that there was credible evidence supporting Judge Burke's finding that plaintiff needed an FRO. The judge credited plaintiff's testimony that defendant would not stop sending the numerous text messages without an FRO or other governance by the court. Accordingly, we find that the judge's determination that the need for an FRO was "imminent" and necessary to protect plaintiff from further abuse by defendant was supported by sufficient evidence in the record. That finding was supported by credible evidence, which established both prongs required for the issuance of an FRO. See Silver, 387 N.J. Super. at 125-27.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Hasley

Clerk of the Appellate Division